In re TERRACOR, Terra Marketing of Nevada, Inc., Terracor Utah, the Woods Marketing, Inc., Bloomington Realty Corp., Terracor Realty Company, Terra Building Systems, Inc., Environmental Design Group, Terra Construction, Inc., Terra Engineering, Inc., and Salt Lake Mortgage Company, Debtors.

Nos. 81–00599 to 81–00602 and 81–00689 to 81–00696.
No. 88MIS–63G.

United States District Court, D. Utah, C.D.

April 27, 1988.

Ronald W. Goss, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for Pinery Homeowners' Ass'n, Inc.

David E. Leta and Bruce Wycoff, Hansen & Anderson, Salt Lake City, Utah, for Senior Corp.

## ORDER OF ABSTENTION

J. THOMAS GREENE, District Judge.

THIS MATTER came on for hearing before the undersigned United States District Judge on April 18, 1988, to consider the objections of Senior Corp. to the Report and Recommendation for Abstention Pursuant to 28 U.S.C. § 1334(c)(1) and Bankruptcy Rule 5011(b) submitted by the Honorable Judith A. Boulden, United States Bankruptcy Judge. Senior Corp. requests that the Court reject the bankruptcy judge's recommendation for abstention and withdraw the reference of this contested matter pursuant to 28 U.S.C. § 157(d). The Court has reviewed the Report and Recommendation and does not believe that withdrawal of the reference is justified in this proceeding. The Court finds that discretionary abstention is proper under 28 U.S.C. § 1334(c)(1) for the reasons set forth by Judge Boulden. Accordingly, it is hereby

ORDERED, that this Court and the bankruptcy court as a unit hereof shall abstain from hearing or determining this matter; and it is further

ORDERED, that the motion of Senior Corp. to withdraw the reference to the bankruptcy court be, and the same hereby is, DENIED.

## REPORT AND RECOMMENDATION FOR ABSTENTION PURSUANT TO 28 U.S.C. § 1334(c)(1) AND BANKRUPTCY RULE 5011(b)

This court's recommendation to abstain pursuant to 28 U.S.C. § 1334(c)(1) and Bankruptcy Rule 5011(b) from a determination of matters raised by the motions filed herein, clarifies the extent to which this court should exercise jurisdiction retained by it under a five year old confirmed Chapter 11 plan of reorganization. The issue arises from The Pinery Homeowners Association, Inc.'s (PHA) Motion to Order Performance of Reorganized Debtor's Chapter 11 Plan and Senior Corp.'s (Senior) responsive Motion for Declaratory Judgment and for Affirmative Relief and related motions. This determination is necessarily fact specific and therefore requires a brief recitation of the circumstances giving rise to the pending motions.

### BACKGROUND

The filing on February 24 and 26, 1981, of Terracor and various of its subsidiaries [1] (Terracor) under Chapter 11 of the Bankruptcy Code brought under the jurisdiction of this court one of the state's largest real estate developers. Terracor was involved in the development of planned residential communities in four states [2]. Senior, a creditor claiming a security interest in virtually all of the assets of Terracor, sued Terracor and its subsidiaries in various jur-

---

**1.** Terracor, Terra Marketing of Nevada, Inc., Terracor Utah, The Woods Marketing, Inc., Bloomington Realty Corporation, Terracor Realty Company, Terrabuilding Systems, Inc., Environmental Design Group, Terra Construction, Inc., Terra Engineering, Inc., and Salt Lake Mortgage Company were consolidated for the purposes of administration by Order entered February 27, 1981.

**2.** In Utah, the assets of Terracor consisted of planned residential communities including Bloomington Ranches/Country Club, Bloomington Hills and Stansbury Park. Additional projects included Bailey Creek in Idaho, The Pinery in Colorado, and The Woods in Wisconsin.

isdictions in which Terracor's assets were located, thus precipitating the filing of the Chapter 11 case. Terracor's schedules listed more than 18,000 creditors. The claim filed by Senior alone exceeded $118,000,000. Protracted and complex negotiations resulted in a case file measured in yards rather than inches and a docket sheet 24 pages long, but on November 4, 1982, Terracor was successful in confirming its 123 page Second Amended Consolidated Chapter 11 Plan of Debtors (Plan).

A portion of the plan related to a planned residential community located in Douglas County, Colorado known as The Pinery. The Plan provided that upon confirmation Terracor would transfer all of The Pinery property to Senior in return for cash advances and a reduction in Senior's claim by $6,300,000. Thereafter, Terracor would have no further interest in or responsibility for The Pinery. Terracor, in fact, transferred the property to Senior as required in the Plan. It is the court's understanding that Senior continues to develop The Pinery which currently consists of approximately 3,800 acres.

The Plan acknowledged the following entities in relation to The Pinery development: 1) The Pinery Property Protection Committee [3] 2) The Pinery Metropolitan District [4] to be created by December 31, 1985, and 3) The Pinery Homeowners Association, Inc. (PHA) [5]. The Plan incorporated by exhibit a separate contract entitled The Pinery Assumption Agreement (Agreement), dated October 8, 1982, which complimented and clarified the Plan, and was executed by Terracor, The Pinery Property Protection Committee, PHA, and Senior. The Agreement dictated that a portion of The Pinery property, consisting of the common area, be transferred from Terracor to Senior to be held by Senior and eventually transferred to The Pinery Metropolitan District if formed by December 31, 1985, or in the alternative, to PHA if The Pinery Metropolitan District was not formed. In fact, the Pinery Metropolitan District never was formed. The common area property consisted, in part, of certain open space of approximately 15.4 acres to be used as an equestrian center or for other noncommercial, nonresidential community recreational purposes.[6] The Agreement provided that any disputes were to be resolved pursuant to the laws of the State of Colorado.[7] The Agreement also indicated that upon confirmation of the Plan, letters of credit were to be given to The Pinery Property Protection Committee and PHA to be used to pay legal and professional fees through December 31, 1985, to fund certain improvements at The Pinery and to fund creation of The Pinery Metropolitan District in compliance with the laws of the State of Colorado.[8]

## CURRENT STATUS OF THE CASE

Subsequent to the confirmation of the Plan, the court's docket sheet indicates the case lay dormant from September 8, 1983, until almost 5 years after confirmation when, on September 25, 1987, PHA filed its Motion to Order Performance of Reorganized Debtor's Chapter 11 Plan. PHA's

---

3. The Pinery Creditor's Committee consisted of a committee of persons owning lots at The Pinery and purchasers under Pinery Lot Purchase Contract, which was duly authorized to act as a statutory creditors' committee in Terracor's Chapter 11 case.

4. The Pinery Metropolitan District was to be a special taxing and assessment district to be formed under the applicable laws of the State of Colorado to own, operate and maintain certain common areas at The Pinery.

5. The Pinery Homeowners Association, Inc., is a Colorado not-for-profit corporation whose members are homeowners at The Pinery.

6. The Agreement provided at page 4 that "Said site shall not be used for commercial, residential, industrial or other related non-recrea-

tional community purposes." Senior sought and gained approval in 1985 from Douglas County for The Pinery Development Guide, which provided for non-equestrian uses of the property, including business and commercial development, according to Master Plan Parcel G. Senior now requests this court to reform the Agreement and Plan to conform to the post-confirmation modification of the Master Plan.

7. "Section 15: This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado."

8. Senior now alleges unjust enrichment and conversion of a portion of those funds.

motion requested that the court order Senior to convey the common areas to PHA as set forth in the Plan and Agreement. Senior responded to PHA's Motion [9] and also filed a Motion to Dismiss for lack of subject matter jurisdiction. Senior soon thereafter withdrew its Motion to Dismiss and brought on for hearing in lieu thereof, a Motion to Amend Response objecting to the subject matter jurisdiction of this court. Both parties requested *pro hac vice* admission of local Colorado counsel, which was granted.

On February 3, 1988, this court heard various procedural motions [10] and, upon request, established an expedited discovery schedule. As evidenced by various discovery motions brought before this court, the parties are continuing extensive discovery both in and out of Colorado. Trial of PHA's motion and Senior's response is now set for April 26 through April 28, 1988. In oral argument on Senior's Motion to Amend Response, the parties raised this court's obligation under 28 U.S.C. § 157(b)(3) to determine whether or not this matter is a core proceeding. Senior objects to this court's hearing the matter as a core matter or entry of any order as set forth in

---

**9.** Senior's Motion For Declaratory Judgment And For Affirmative Relief restated in more extensive detail its Response to PHA's Motion to Compel Performance Under the Plan and asserted a variety of grounds for affirmative relief. Senior asserts that PHA's post-confirmation conduct, its failure to perform conditions precedent, its wrongful refusal to accept tender of deeds, and its inability to maintain, protect and preserve the property, should preclude this court's ruling in favor of PHA. Further, Senior asserts the plan should be 1) reformed to convey the property not to PHA, but to Pinery East, 2) reformed to correct the reference provisions of the Agreement, and 3) modified to require an accounting by PHA of the letters of credit and requesting judgment against PHA for unjust enrichment and conversion. In addition, Senior requests judgment rescinding a post-confirmation agreement transferring property for a second RV site and for appointment of a Receiver to hold all rents thereon.

**10.** Senior also filed a Motion for Determination of the Scope of Rule 7001 asserting that the initial motion filed by PHA as a contested matter under Rule 9014 was improper and should properly be characterized as an adversary proceeding pursuant to Rule 7001 et. seq. The court determined that PHA's motion should proceed as a contested matter, and, as allowed under Rule 9014, the court held that all rules of Part VII of the Bankruptcy Rules were to be incorporated into the subsequent litigation.

It is not uncommon for a court to be called upon to determine whether an action should be characterized as a contested matter or an adversary proceeding. Concerns of equity and procedural due process must be balanced against the underlying concern of the Code that cases move forward in as expeditious a manner as possible.

Rule 7001 sets forth with specificity what should be considered to be an adversary proceeding. Senior asserted that subsections (1), (2), (7) and (9) were all applicable and required refiling of PHA's Motion as an adversary proceeding. None of the actions articulated in Rule 7001 mentions judicial enforcement of a confirmed plan.

Contested matters are actions "which do not qualify as adversary proceedings because they are not defined as such by Rule 7001 but which, nevertheless, resemble adversary proceedings in that there are two parties who are opposing each other with respect to relief sought by one of them." 9 COLLIER ON BANKRUPTCY para. 9014.03 (15th ed. 1987). Contested matters may generally be characterized as less complex in nature than adversary proceedings and are "better suited to relatively uncomplicated disputes that can be adjudicated summarily." *In re Riding*, 44 B.R. 846, 858 (Bankr.D.Utah 1984). Even though the court has chosen to hear these matters as contested matters rather than adversary proceedings, they are proceedings appropriate for abstention under 28 U.S.C. § 1334(c)(1).

This generality should not, and does not, preclude a complex dispute from being a contested matter. This is evidenced by the discretion given the court in Rule 9014 to direct that any rules in Part VII not already incorporated by Rule 9014 be applied as necessary to assure due process. To rule that all matters related to enforcement of a confirmed plan are contested matters because they are not set forth specifically in Rule 7001, could result in denial of due process. Conversely, to require all post-confirmation enforcement allowed under 11 U.S.C. § 1142(b) to proceed as adversary matters would delay those routine and simple matters which could better be determined as expeditiously as possible. The court must strike a balance on a case by case basis which is practical while safeguarding the rights of the parties. The issues in this matter were sufficiently joined to effectuate full consideration by the court. Dismissal of PHA's motion and refiling as an adversary proceeding would only result in delay, therefore, the court ordered that the litigation proceed as a contested matter with full inclusion of the rules in Part VII.

28 U.S.C. § 157(c)(2).[11] These issues were taken under advisement, resulting in this Report and Recommendation to the district court filed in accordance with Bankruptcy Rule 5011 for disposition of these issues pursuant to 28 U.S.C. § 1334(c)(1).

## ANALYSIS

This court has determined that in the interest of comity with state courts and respect for state law, it should abstain from hearing these matters involving disputes that can be better litigated in Colorado. This decision is made based upon the specific facts of this case. These matters are merely related to the main bankruptcy case. The debtor's plan was confirmed 5 years ago and has been largely completed. The interpretation of the Agreement in question must be according to Colorado law. In addition, the Agreement was an attachment to the Plan and is a self contained document relating to the Colorado real property transferred from Terracor at confirmation. As an attachment, the Agreement did concern the Plan, but now the resolution of these disputes will not affect the reorganized debtor. This is only a dispute between Senior and PHA. Senior has, in fact, questioned this court's subject matter jurisdiction to hear these disputes. Accordingly, it is appropriate to first consider the court's jurisdiction in this analysis.

## A. SUBJECT MATTER JURISDICTION:

■ As noted in *In re Fortner Oilfield Services, Inc.*, 49 B.R. 9, 10 (Bankr.N.D. Tex.1984), the jurisdiction of the bankruptcy court continues until the Chapter 11 case is closed. "The courts which have addressed the issue uniformly note that jurisdiction extends over postconfirmation proceedings regarding rights arising under the confirmed plan." *Id.* (citations omitted). Subject matter jurisdiction is specifically conferred on the bankruptcy court to resolve post-confirmation matters. *See* 11 U.S.C. § 1142. Section 1142 provides in part:

> (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Senior argues that this court does not have subject matter jurisdiction because the case is consummated. This court is not persuaded that Senior's interpretation of the

---

**11.** Senior filed a motion under 28 U.S.C. § 157(b)(3) and Rule B–107, Utah District Court Rules, requesting this court to determine that the pending matters are noncore proceedings as set forth in 28 U.S.C. § 157(b). In response to *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted 28 U.S.C. § 157 in order to provide a framework within which bankruptcy courts could constitutionally hear bankruptcy proceedings. 28 U.S.C. § 157 divides matters into core and noncore proceedings. Section 157(b)(2) provides a non-exclusive list of matters that are core which does not specifically cover post-confirmation disputes or requests for enforcement of orders of confirmation.

In Utah and the Tenth Circuit, the meaning of core has been previously addressed. Core is a proceeding that is "at the core of the federal bankruptcy power." *In re Nell,* 71 B.R. 305, 308 (D.Utah 1987) (citing *Northern Pipeline,* 458 U.S. at 71, 102 S.Ct. at 2871). The Tenth Circuit has indicated that anything involving the liquidation or affecting the debtor's assets come within the

ambit of core proceedings. *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 n. 3 (10th Cir. 1986).

A determination that this matter is noncore is important because only noncore matters are suitable for permissive abstention. *In re Arnold Print Works, Inc.,* 815 F.2d 165, 171 (1st Cir. 1987). Certainly modification of a plan pursuant to 11 U.S.C. § 1127, or revocation of an order of confirmation pursuant to 11 U.S.C. § 1144 would inherently be core proceedings. It is also probable that in circumstances relating to the reorganized debtor, the enforcement or the interpretation of plan provisions generally would be central to the bankruptcy case, especially in dealing with liquidation of assets under a confirmed plan or retention of trustee's avoiding powers. However, this court sees nothing in the present case that is so inherently a bankruptcy matter that it is within the core of the federal bankruptcy power, nor do these matters involve liquidating of affecting the debtor's estate. Therefore, this court determines that this is a noncore proceeding.

language of the statute is correct.[12] The clear intent of section 1142(b) is for the court to retain its jurisdiction to assure that the terms and provisions of the confirmed Chapter 11 plan are carried out until the plan is completed and a final decree is entered closing the case. *See* 11 U.S.C. § 350(a) and Bankruptcy Rule 3022.

Furthermore, the Plan retains jurisdiction in the bankruptcy court.[13] Even though the language of the Plan would not be absolutely controlling to retain jurisdiction beyond the scope of the Bankruptcy Code,[14] it does provide an additional basis for finding that subject matter jurisdiction does exist in this case. Senior was an active participant in the confirmation process and Senior has at least impliedly consented to the retention of this court's jurisdiction as set forth in the Plan.

■ In addition, this matter is a proceeding "related to" a case under Title 11. The jurisdiction of the district court granted under 28 U.S.C. § 1334 is referred to the bankruptcy court for "any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). The district court has referred bankruptcy matters to the bankruptcy judges as set forth in the Order re Referral of Bankruptcy Matters to Bankruptcy Judges, dated July 10, 1984. "Thus, the bankruptcy court has jurisdiction over these cases if they fit within any of the stated categories." *In re Sweetwater*, 55 B.R. 724, 728 (D.Utah 1985).

The Tenth Circuit has stated that "related proceedings are those civil proceedings that, in absence of a petition in bankruptcy, could have been brought in a district court or state court". *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984) (citing the Interim Operating Rule in effect after the *Northern Pipeline* decision). Prior rulings in this court have indicated that actions against nondebtor co-obligors are "related to" the debtor's Chapter 11 case. *See In re Arrow Huss, Inc.*, 51 B.R. 853, 855 n. 1 (Bankr.D.Utah 1985). Other circuit courts have considered the

---

**12.** It has been argued that because the Plan has been "substantially consummated", this court no longer retains jurisdiction. This court retains jurisdiction because the plan has not been *fully* consummated.

Consummation should not be confused with "substantial consummation" which is defined in 11 U.S.C. § 1101(2)

'substantial consummation' means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

The meaning of "consummation" is different from the meaning of "substantial consummation". The phrase "substantial consummation" is used as it relates to one of several grounds for dismissal under 11 U.S.C. § 1112(b) when there is an apparent inability of the debtor to effectuate a substantial consummation of a confirmed plan. In addition, substantial consummation is used as it relates to the allowance of a modification of a confirmed plan under 11 U.S.C. § 1127(b) prior to substantial consummation.

Consummation of a plan involves many different acts, one of which is the "substantial consummation" of a plan. For example, see the list, ranging from presenting the order of confirmation to closing the case, provided in *In re Tri-L Corp.*, 65 B.R. 774, 779 (Bankr.D.Utah 1986) (citing J. Anderson, CHAPTER 11 REORGANIZATIONS § 15.05 at 15–11 to 15–12 (1985) where the author describes the consummation process as carrying out many acts to complete the plan.)

**13.** The confirmed plan provides at Article XVII *Retention of Jurisdiction:*

The court retains jurisdiction over the debtor's Chapter 11 case for the following purposes:

F. Resolution of any and all disputes arising out of the Plan, the Confirmation Order or any other order issued in respect of the Plan, including, without limitation, disputes arising out of the failure of the Debtors, Reorganized Debtors, Senior, any other Creditor, or any other party in interest to perform the acts and meet the obligations required of such Persons under the Plan; ...

. . . .

...H. Resolution of requests for orders directing any and all persons to execute such documents including without limitation, deeds, bills of sale, and similar instruments, as are necessary to effect the terms of the Plan and any other requests pursuant to section 1142(b) of the Bankruptcy Code; *Terracor Confirmed Plan*, at 107–109.

**14.** For example, see the discussion in *In re Tri-L Corp.*, 65 B.R. at 778.

definition of "related to". The Eighth Circuit has defined "related to" as requiring that the proceeding have some "effect on the administration of the debtor's estate". *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987) (citing *Zweygardt v. Colorado Nat'l Bank of Denver,* 52 B.R. 229, 233 (D.Colo.1985)). The Third Circuit has also ruled that "the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate in bankruptcy....*" *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis included).

The issues raised by the parties appear to be, in part, proceedings that request this court to interpret provisions of the Plan confirmed by this court. The enforcement or interpretation of plan provisions are integral to the bankruptcy case. Any matters which this court would be called upon to decide in interpreting the intent of the parties in the formulation of the Plan, would require retention of this court's jurisdiction. The court always retains jurisdiction to review and interpret its own orders. However, even though jurisdiction continues until the case is closed and is also found through section 1142(b) to resolve post-confirmation matters, that does not necessarily mean that the bankruptcy court is compelled to hear and decide every dispute that occurs after a plan is confirmed. Accordingly, abstention is appropriate under these specific circumstances.

**B. PROCEDURE FOR ABSTENTION:**

█ This Report and Recommendation has been forwarded to the district court

*sua sponte.*[15] The importance of these issues as they relate to case administration, and in particular as they relate to these parties and the continuing plethora of pleadings filed, compel this court under 11 U.S.C. § 105 to expeditiously resolve these issues before more effort is expended by this court and counsel. For the court to harbor doubts regarding the propriety of continuing this proceeding, pending the parties raising the abstention issue, would be inconsistent with judicial responsibility. Matters involving abstention come within the general context of subject matter jurisdiction. Questions involving subject matter jurisdiction may be asserted by any party at any time or raised by a court *sua sponte. See e.g.* Bankruptcy Rule 7012(h) (sic); *In re Ryther,* 799 F.2d 1412 (9th Cir.1986).

Abstention of a particular proceeding is set forth in 28 U.S.C. § 1334(c):

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely

---

**15.** This court is aware of ruling in *In re Retirement Inn At Forest Lane, Ltd.,* 83 B.R. 795, 797 (D.Utah 1988) relative to the bankruptcy court's authority to transfer matters to the district court in accordance with Local Rule B–106. This report and recommendation, however, is not a transference of a matter for initial review by the district court.

Section 1334(c)(1) allows the court to act in absence of a motion by a party in interest. *In re World Financial Services Center, Inc.,* 81 B.R. 33, 39 (Bankr.S.D.Cal.1987) (citation omitted). "Therefore, abstention may be raised by the court *sua sponte.*" *Id.* (citing *Bellotti v. Baird,* 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 2864 n. 10,

49 L.Ed.2d 844; *Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 563 (2d Cir.1978)). Other cases have brought motions to abstain *sua sponte.* In *In re Republic Reader's Service, Inc.,* 81 B.R. 422 (Bankr.S.D.Tex.1986) the bankruptcy judge brought a motion to show cause why abstention from the adversary proceeding before the court would not be proper. The *Republic Reader's* court determined that a *sua sponte* motion to abstain was proper pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, the local District Court's Order of Reference of Bankruptcy Cases to the Bankruptcy Courts and in accordance with Rule 5011(b) of the Bankruptcy Rule. *Id.* at 427.

adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.[16]

The inclusion of Rule 5011 into the Bankruptcy Rules in the 1987 Amendments, promulgated by the United States Supreme Court and effective August 1, 1987, provides the procedure for forwarding this Report and Recommendation to the district court.[17]

## C. PERMISSIVE ABSTENTION UNDER SECTION 1334(c)(1):

Abstention under 28 U.S.C. § 1334 is divided into two categories. Abstention under Section 1334(c)(1) can be described as permissive abstention and abstention under section 1334(c)(2) as mandatory abstention. In order for a proceeding to come within the framework of mandatory abstention, specific factors must exist for the court to have abstention forced upon it under the law. In this case, at least two factors do not exist that must be present in order to give rise to mandatory abstention. These factors include the failure of a party to file a timely motion to abstain and the fact that no state court action is pending.[18]

The basis for permissive abstention under section 1334(c)(1) is completely different from mandatory abstention under section 1334(c)(2). The provisions for mandatory abstention are a result of the Supreme Court's decision in *Northern Pipeline* and the subsequent 1984 amendments. Permissive abstention is rooted in the interests of justice, comity with state courts and respect for state law.[19] Abstention "reflect[s] a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Penzoil Co. v. Texaco, Inc.,* — U.S. —, — n. 9, 107 S.Ct. 1519, 1526 n. 9, 95 L.Ed.2d 1 (1987). Permissive abstention is an important tool for the court to properly act in the interest of comity with state laws that are often required to be interpreted in bankruptcy courts. The wisdom of the inclusion of the language dealing with permissive abstention is particularly evident in a case such as this which involves a post-confirmation proceeding that can be adjudicated in the state courts.

This Report and Recommendation has been submitted to the parties and they have 10 days to file objections prepared as required in Rule 9033(b).

---

**16.** For a general discussion explaining the distinction between permissive abstention under section 1334(c)(1) and mandatory abstention under section 1334(c)(2) plus the historical background of abstention in bankruptcy as it relates to the *Northern Pipeline* decision, see 1 NORTON BANKRUPTCY LAW AND PRACTICE § 5.39 at 195 to 217 (1987).

**17.** Rule 5011 sets forth a clear procedure for providing a report and recommendation to the District Court for a final order on the motion for abstention. Rule 5011(b) states:

(b) Abstention from Hearing a Proceeding. Unless a district judge orders otherwise, a motion for abstention pursuant to 28 USC § 1334(c) shall be heard by the bankruptcy judge, who shall file a report and recommendation for disposition of the motion. The clerk shall serve forthwith a copy of the report and recommendation on the parties to the proceeding. Within 10 days of being served with a copy of the report and recommendation a party may serve and file with the clerk objections prepared in the manner provided in Rule 9033(b). Review of the report and recommendation by the district court shall be governed by Rule 9033.

**18.** Different authorities have set forth specific factors required in order to apply mandatory abstention. One treatise has identified five factors: (1) the party to the proceeding must make a "timely" motion for abstention by the court; (2) a proceeding must be "based upon a state-law claim or state-law cause of action"; (3) the proceeding must be one that is "related to" the title 11 bankruptcy case, but it must not actually "arise under title 11" or "arise in" a case under title 11; (4) the proceeding must be such that an action could *not* have commenced "in a court of the United States absent jurisdiction under this section [Section 1334(c)(2)]"; and (5) there must be a proceeding that has commenced and is pending in the state forum in favor of which the bankruptcy court may abstain. 1 NORTON BANKRUPTCY LAW & PRACTICE § 5.39 at 208–212 (1987).

**19.** 1 NORTON BANKRUPTCY LAW AND PRACTICE § 5.39 at 199.

The Sixth Circuit Court of Appeals in *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985), was faced with a post-confirmation request for abstention involving state personal injury actions. After resolving the apparent conflict between 28 U.S.C. § 157(b)(5) and 28 U.S.C. § 1334(c)(1), the court concluded that abstention was appropriate in the interest of justice and comity. *Id.* at 273. The court recognizes "that federal courts should be hesitant to exercise jurisdiction when 'state issues substantially predominate, whether in terms of proof, or scope of issues raised, or of the comprehensiveness of the remedy sought.'" *Id.* at 274 (citing *United Mineworkers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). Even though the present case does not involve hundreds of defendants that might exist in personal injury tort litigation, this court finds that drawing the line in this case involving tangential post-confirmation matters between two third parties concerning the interpretation of a contract governed by state law relating to real property located in that state, provides an equally justifiable grounds for permissive abstention. "[J]udicial health and survival [of the bankruptcy court], or at least judicial economy and expeditiousness, may depend on the court's authority to refer cases to other courts." *White Motor*, 761 F.2d at 274.

One court has prepared an exhaustive list of factors to be considered in deciding to abstain under section 1334(c)(1). *In re Republic Reader's Service, Inc.*, 81 B.R. 422 (Bankr.S.D.Tex.1986). The court in *Republic Reader's* considered 12 factors in deciding to abstain under section 1334(c)(1):

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the sub-

stance rather than the form of the asserted "core" proceeding, (8) the feasibility of severing state law claims or bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of my docket, (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties, and (12) the presence in the proceedings of nondebtor parties.

*Id.* at 429. While this court would not necessarily choose to look to all of the factors listed by the *Republic Reader's* court in deciding to abstain, the list generally provides an example of factors that are unique to the area of bankruptcy that are relevant to permissive abstention. The issues of this case are sufficiently distinctive that preparation of such lists is probably unproductive, however, several factors are important in determining that abstention is appropriate in the present case.

### D. FACTORS RELEVANT TO ABSTENTION IN THE PRESENT CASE:

■ Initially, it must be emphasized that the Plan was confirmed just short of five years prior to the filing of the motion by PHA and that, as per Terracor, has reached substantial consummation. This matter does not concern the reorganized debtor. Terracor transferred all of its right, title and interest in the real property at issue to Senior at confirmation. Whatever the resolution of the dispute between PHA and Senior, the implementation of the Plan will not be altered as it relates to the reorganized debtor. The parties presently before the court entered into the Agreement with Terracor and that document is relatively self contained. By section 15 of the Agreement, the laws of the State of Colorado apply to its interpretation. The real property which is the subject of these various motions is located in the State of Colorado. PHA is a not-for-profit corporation established under the laws of the State of Colorado. Senior is a major lender incorporated in the State of Delaware, but doing business in the State of Colorado as the developer of The Pinery. Both parties have

moved *pro hac vice* for admission of counsel located the Denver area and are, therefore, well represented in Colorado. Substantial discovery has been carried on in Colorado. Apparently, certain of the witnesses who may be called at trial would be required to travel here from Colorado. Finally, entities not parties to this dispute such as adjacent property owners located in Colorado may have an interest in the outcome of the dispute.

The Motion of Senior Corp. for Declaratory Judgment And For Affirmative Relief seeks reformation of the Plan by adding to it the Pinery PD Master Plan approved by Douglas County in 1985 and 1987. That document appears to modify the provisions of the Agreement limiting the use of the common areas to recreational purposes and not for non-recreational, commercial, residential, or industrial purposes. Senior also seeks to reform the Plan by transferring title to the property set forth in the Plan not to PHA, but to "Pinery East". That entity is dealt with nowhere in the Plan or Agreement. This court makes no determination regarding the alternate issues raised by Senior's motion, but recites these issues for illustrative purposes in that matters wholly unanticipated by the Plan are at issue here.

The rights of these parties arise directly from the Plan and the Agreement, documents this court is certainly empowered to interpret, or, if allowable under the Code, to modify pursuant to 11 U.S.C. § 1127. However, the creation of the property rights conferred upon the parties by 11 U.S.C. § 1141 and the Plan necessarily give rise to a new and fully enforceable contract which could be interpreted by any court. In the interest of comity with state courts and respect for state law, this dispute can better be decided by the Colorado courts applying Colorado law. Because the bankruptcy courts were established to have limited jurisdiction to decide matters involving state law only when necessary, it is appropriate to allow the Colorado courts to ultimately decide this dispute between these parties.

The court also feels that given its determination that this is a noncore matter, the ultimate resolution of this dispute should come more quickly in the state context rather than in the federal forum. The district court will likely be required to hear portions of the proposed findings and conclusions *de novo* no matter which party prevails in the bankruptcy court. By reducing the number of steps in which the two parties may appeal the decision of the lower courts, justice will presumably be better served if this case is decided in the Colorado courts. The parties have been directed previously to continue with trial preparation pending this court taking these matters under advisement. It is assumed that the parties will be able to utilize their trial preparation in the state court action without any difficulty. Regardless of this court's abstention, jurisdiction is retained over these matters as allowed under 11 U.S.C. § 1142 and the Plan in order to assure that the dispute is resolved in a timely manner in the Colorado court in order to ultimately complete the closure of the case.

## CONCLUSION

*Northern Pipeline* provides sound theoretical guidance for this court by instructing circumspection in exercising its power over issues of this nature. The purpose and function of this court is as an emergency court to promote the two-fold policy of providing a fresh start or rehabilitation to troubled debtors, and to provide an orderly and rational basis of protecting creditors rights. The structure of the court and its rules and procedures provide for expedited, emergency, resolution of such matters and are intended to be used efficiently and summarily until the point where either an orderly liquidation of the debtor's assets is conducted, or a reorganized debtor is placed back upon its feet in the community for the purpose of effectuating its plan of reorganization. This court was never intended to be the residual depository for all controversies which may result from the confirmation of a plan of reorganization. To do so would overburden the bankruptcy court's system with post-confirmation mat-

ters. The court wishes to send the clear message that in cases involving confirmed Chapter 11 plans where a plan is largely completed, and where the resolution of the dispute will have little if any affect on the bankruptcy case in general, litigation in order to resolve disputes between third parties need not be brought in the bankruptcy court. The bankruptcy courts must act to abstain from cases that should be decided by state courts. If permissive abstention is not employed, disputes would remain in perpetuity in this court. Disputes should be transferred back to those jurisdictions fully capable and statutorily designed to resolve them. Therefore, this court respectfully recommends the district court enter an order abstaining pursuant to 28 U.S.C. § 1334(c)(1) from resolution of the dispute between Senior and PHA.

RESPECTFULLY SUBMITTED this 10th day of March, 1988.

(s) Judith A. Boulden
JUDITH A. BOULDEN
United States Bankruptcy Judge