**In re INCOR, INC., Debtor.**

**The FIRST NATIONAL BANK OF MARYLAND, Plaintiff,**

v.

**UNITED STATES WALL CORPORATION, Defendant.**

**Bankruptcy No. 87–5–1292. Adv. No. A88–0316–JS.**

United States Bankruptcy Court, D. Maryland.

June 7, 1989.

Michael J. Schwarz, Schwarz, Greenblatt & Rafferty, Baltimore, Md. for defendant.

William L. Hallam, Paul J. Cohen, Gebhardt & Smith, Baltimore, Md. for plaintiff.

## MEMORANDUM OPINION DENYING MOTION FOR RECONSIDERATION OF DISMISSAL OF ADVERSARY PROCEEDING

JAMES F. SCHNEIDER, Bankruptcy Judge.

The issue in this case is whether the bankruptcy court has jurisdiction to entertain a collection suit *brought by a secured creditor against an account debtor of a Chapter 7 debtor* to collect prepetition and postpetition receivables, after the modification of the automatic stay allowed the secured creditor to enforce its rights as to its collateral in the receivables. This opinion holds that there is no jurisdiction over such a suit in the bankruptcy court and that therefore the secured creditor must proceed, if at all, in a state court of competent jurisdiction or in a Federal district court based upon diversity of citizenship.

## FINDINGS OF FACT

1. Incor, Inc., filed a voluntary Chapter 11 bankruptcy petition in this Court on June 10, 1987 (Case No. 87–5–1292). On the date of the filing of the petition, the debtor-in-possession was a corporation engaged in the business of owning and operating a steel mill located at 4601 North Point Boulevard, Baltimore, Maryland, which manufactured drywall studs, structural grade steel studs, wire mesh and related products.

2. Simultaneously filed with the petition on June 10, 1987 was a "Consent Order Authorizing Debtor to Use Cash Collateral and to Obtain Post–Petition Financing" [P. 8] (Mannes, B.J.). By the terms of this Order, Incor, Inc., and The First National Bank of Maryland ["First National" and/or "the Bank"] acknowledged that the Bank was the debtor's only secured creditor by reason of the following provisions:

■ The First National Bank of Maryland (hereinafter "FNB") is the beneficiary of a Deed of Trust dated June 30, 1986 constituting a first lien on the Debtor's real property and securing repayment of the obligations of the Debtor under a Promissory Note dated June 30, 1986 in the original principal amount of $5,500,000 (hereinafter "IRB Note") and a demand Business Purpose Promissory Note dated June 30, 1986 in the original principal amount of $1,500,000 (hereinafter "Line of Credit Note").

■ FNB additionally holds a first perfected security interest in the Debtor's accounts receivable, intangibles, and all tangible property, including but not limited to, equipment, inventory, and fixtures, to secure repayment of the Debtor's obligations under the Line of Credit Note and a second perfected security interest in all of the Debtor's accounts receivable, intangibles, and all tangible personal property, including, but not limited to, equipment, fixtures, and inventory, to secure repayment of the debtor's obligations under the IRB Note. The IRB Note, the Line of Credit Note, and all related documents shall be referred to collectively herein as the "Loan Documents".

■ No creditor other than FNB holds a security interest in any assets of the Debtor.

*Consent Order dated June 10, 1987* [P. 8]

3. The parties further agreed that the Bank would permit Incor, Inc., to use its cash collateral and the Bank would advance post-petition financing in accordance with certain conditions contained in the Order, including the following:

■ All advances made by FNB to the Debtor after the date of the filing of the Petition shall bear interest at the

default rate provided for in the Line of Credit Note. All advances made by FNB to the Debtor after the date of the filing of the Petition pursuant to the terms of this Order shall have priority over any and all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code, shall have super priority over any and all secured, unsecured, and priority claims and expenses in this case, whether incurred or arising before or after the entry of an order of this Court converting this case pursuant to § 1112 of the Code, and shall be secured by the liens described in Paragraph 17 hereof. No cost or expenses of administration shall be imposed against FNB, its claims, or its collateral.

Notwithstanding the provisions of § 552(a) of the Bankruptcy Code, and in addition to the security interest granted by § 552(b) of the Code, FNB shall have a security interest in any and all real and personal property of the Debtor, both tangible and intangible, which is or has been acquired, generated, or received after the filing of the Debtor's Petition, as security for any and all indebtedness of the Debtor to FNB, whether arising before or after the date of the filing of the Debtor's Petition.

The security interests granted in this Order shall become and are deemed perfected without the necessity for the filing or execution of the documents which might otherwise be required under non-bankruptcy law for the perfection of the security interests. Such perfection shall be binding upon any subsequently appointed trustee, either in Chapter 11 or under any other chapter of the Bankruptcy Code, and upon all creditors of the Debtor who have extended or who may hereafter extend credit to the Debtor or the Debtor-in-Possession.

*Id.*

4. Three subsequent consent orders [PP. 28, 53 and 64] respectively dated July 24, 1987, September 8, 1987 and December 4, 1987, extended the debtor's use of cash collateral on an interim basis until March 7, 1988.

5. One hundred thirty-six (136) separate claims have been filed in the instant bankruptcy case since its inception. Of these, Claim No. 25 filed by the Bank on July 30, 1987, in the amount of $5,535,265.21 is the largest and the only secured claim.

6. On or about January 29, 1988, the business of the debtor ceased because of its inability to properly fund its manufacturing operations. *Transcript of testimony of Francis L. Hunt,* p. 18, Hearing of April 27, 1988 [P. 121].

·7. On February 11, 1988, Incor, Inc. filed a complaint in this Court (Adversary No. 88–0033B) against the Bank for declaratory and injunctive relief in which it alleged that because of the debtor's impending default on its cash collateral agreement, the Bank froze all funds in the debtor's payroll account, thereby causing the payroll checks payable to debtor's employees to be dishonored. (The complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6) on October 12, 1988.)

8. On February 26, 1988, the Bank filed in this Court a motion seeking *ex parte* or emergency relief from automatic stay (Motion No. M88–0228B). The motion indicated that the Bank was not adequately protected due to the cessation of the debtor's business operations resulting in a diminution of the collectability of the debtor's accounts receivable and requested a modification of the automatic stay to permit the Bank to collect the debtor's receivables and apply them to the debtor's obligations to the Bank under its notes and cash collateral orders.

9. By Order [P. 6] dated March 10, 1988, this Court granted the motion for cause, including a lack of adequate protection pursuant to 11 U.S.C. § 362(d)(1).

10. By Order dated April 28, 1988 [P. 102], this Court authorized the sale outside of a Chapter 11 plan of all the real and personal property of Incor, Inc., to Dale Industries, Inc., for a purchase price of $2,225,000, from which an appeal was taken to the U.S. District Court and later dismissed.

11. On October 21, 1988, the U.S. Trustee filed a motion to convert the case to a

proceeding under Chapter 7 by reason of the debtor's failure to pay quarterly fees as required under Chapter 11. After notice and a hearing, the motion was granted by Order entered on January 25, 1989 [P. 136].

12. Meanwhile, on October 11, 1988, while the bankruptcy case was still in the posture of a Chapter 11 proceeding, the Bank filed the instant complaint against the United States Wall Corporation to recover accounts receivable. Count 1 refers to accounts receivable in the amount of $23,939.43 plus interest and costs owed to Incor, Inc. before the filing of its bankruptcy petition on June 10, 1987. Count 2 seeks the payment of post-petition accounts receivable in the amount of $45,181.01 plus interest and costs.

13. On November 21, 1988, the defendant, United States Wall Corporation, filed a motion to dismiss for want of jurisdiction [P. 6]. The motion alleged both a lack of subject matter jurisdiction over the cause of action for collection of accounts receivable and a lack of personal jurisdiction over the defendant and asserted that the instant complaint is a "non-core" proceeding. A memorandum was filed in conjunction with the motion.

14. The Bank filed its own memorandum [P. 9] in opposition to the defendant's motion to dismiss. The memorandum asserted that the motion was filed eleven days after the deadline for filing an answer and during the pendency of the Bank's motion for default judgment. It challenged the defendant's allegation that the complaint is a non-core proceeding, at least as to the postpetition accounts sued for in Count 2 and asserted that this Court has jurisdiction to enter proposed findings of fact and conclusions of law to be submitted to the U.S. District Court as to the non-core cause of action contained in Count 1.

15. Nevertheless, this Court entered an Order dismissing complaint [P. 10] on January 4, 1989. Thereupon the Bank filed a motion for reconsideration [P. 11] upon which this opinion is based.

16. In response to the motion for reconsideration, the defendant United States Wall Corporation filed the following "Affidavit in Support of Dismissal for Want of Jurisdiction" [P. 15]:

David Belvitch, being first duly sworn on oath deposes and makes the following Affidavit:

■ My name is David Belvitch and I am currently President/CEO of United States Wall Corporation.

■ I am familiar with the transactions between Incor, Inc. and United States Wall Corporation. Incor, Inc. shipped some product on open account to United States Wall Corporation. There is a discrepancy between Incor, Inc.'s records and ours. We have tried to resolve the issues to no avail. The amount, if any, which is owed is disputed.

■ United States Wall Corporation has never done business in Maryland. United States Wall Corporation has a manufacturing facility and corporate office in Minnesota. It ships its products from Minnesota to its user/customers. It has not shipped product to Maryland. Its only contact with Incor, Inc. was by telephone. Its purchase order reflects a choice of law selection applying Minnesota law to its transactions with Incor, Inc.

■ United States Wall Corporation has had no business dealings with the Plaintiff The First National Bank of Maryland.

■ It would be a significant hardship if United States Wall Corporation would have to appear in a Maryland court to defend itself. All of United States Wall Corporation's records and any witnesses on its behalf are located in Minnesota.

Further Your Affiant Sayeth Not.

*Affidavit of David Belvitch [P. 15].*

CONCLUSIONS OF LAW

■ 1. This Court has the inherent power to question its own jurisdiction in any given case, and its ability to dismiss a cause of action for want of subject matter jurisdiction is not dependent upon the timeliness of a motion to dismiss. *See* 1 *Collier on Bankruptcy,* ¶ 3.01[2][c] (15th ed. 1988).

2. With respect to the collection of prepetition accounts receivable *by a debtor,* the U.S. Supreme Court in *Northern Pipe-*

*line Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) held unconstitutional Congress' broad grant of jurisdiction to bankruptcy courts to adjudicate such claims under the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549. The *Marathon* decision stands only for the proposition that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 584, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409, 422 (1985).

3. In response to *Marathon, supra,* Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ["B.A.F.J.A."], Pub.L. No. 98–353, 98 Stat. 333, which replaced the unconstitutional grant of bankruptcy jurisdiction contained in 28 U.S.C. § 1471 with a more narrow grant contained in 28 U.S.C. §§ 1334 and 157, which are set forth as follows:

28 U.S.C. § 1334. Bankruptcy cases and proceedings.

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under

title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

*28 U.S.C. § 1334 (Supp. V 1987)*

28 U.S.C. § 157. Procedures.

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under Chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against

the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*28 U.S.C. § 157 (Supp. V 1987).*

4. The Court is not in disagreement with the cases cited by the Bank in its brief. *In re Epi–Scan, Inc.,* 71 B.R. 975 (Bankr.D.N.J.1987), *In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir.1987), *In re L.A. Clarke & Son, Inc.,* 51 B.R. 31 (Bankr.D.C.1985) and *Edgcomb Metals Co. v. Eastmet Corp.,* 89 B.R. 546 (D.Md.1988) stand for the general proposition that *suits brought by or against debtors* for breach of *postpetition* contracts are core proceed-

ings within the jurisdiction of the bankruptcy court which bankruptcy judges may constitutionally hear and decide. In the view of the court in *Arnold Print Works*, "the matter of timing and the relation to judicial administration of the bankrupt's estate make a critical difference between *Marathon* and the [case *sub judice*]." *815 F.2d at 165–166.* The *Arnold* court cited with approval the case of *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (D.Mass.1985) for the proposition that a suit *by a debtor* to collect a prepetition debt is a non-core matter related to a case under title 11. *Accord, In the Matter of Commercial Heat Treating of Dayton, Inc.*, 80 B.R. 880 (Bankr.S.D.Ohio W.D. 1987).

■ 5. The problem with the cases cited by the Bank is that they do not support its position in the instant case where it is *the Bank*, and *not the debtor*, which is trying to collect both prepetition and postpetition accounts receivable, and where the receivables are no longer property of the estate by reason of the automatic stay having been modified in favor of the Bank at its request. Because of the modification of the stay, neither this Court nor the Chapter 7 trustee any longer has any interest in the Bank's collateral. Whether or not the Bank is successful in its collection efforts will have no impact on the administration of this bankruptcy estate. As a result, the instant complaint is thereby rendered a *non-core proceeding unrelated to the bankruptcy case.*

6. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." [citations omitted.] *Pacor, Inc. v. Higgins*,

743 F.2d 984 (3rd Cir.1984). *Pacor* began as a products liability action brought by a victim of asbestosis against an asbestos supplier in the state courts of Pennsylvania. The supplier then filed a third-party complaint impleading the original manufacturer of the asbestos, the Johns–Manville Corporation. After Manville filed Chapter 11, the state court severed the third-party complaint against Manville and the suit was about to proceed to trial when Pacor, Inc., the defendant-supplier filed a petition for removal of the entire lawsuit to the U.S. Bankruptcy Court for the Eastern District of Pennsylvania and also a motion to transfer the proceedings to the U.S. Bankruptcy Court for the Southern District of New York, the forum in which the Manville bankruptcy was pending. The bankruptcy court remanded the matter, ruling that the removal petition was untimely and that the 30–day deadline for filing a removal petition could not be extended. The district court disagreed with the bankruptcy judge's reasoning, but nevertheless remanded to the state court only that portion of the lawsuit between Mr. Higgins and Pacor, Inc., holding that it was not related to the Manville bankruptcy. The district court reversed the bankruptcy judge as to the third-party action against Manville, holding that it was related to the bankruptcy case, and sent it back to the bankruptcy court to rule on the transfer motion. On appeal, the circuit court affirmed. Although based upon the now-superseded jurisdictional provisions relating to bankruptcy which were formerly contained in 28 U.S.C. § 1471, the decision in *Pacor* retains its authority on the meaning of "related to" jurisdiction based upon sound judicial reasoning and common sense.

7. *In re Terracor*, 86 B.R. 671 (D. Utah 1988) was a decision sustaining a bankruptcy judge's recommendation to permissively abstain from hearing a dispute between nondebtors in a dormant Chapter 11 case nearly five years after confirmation of the debtor's plan of reorganization. The debtor, a large-scale developer of planned residential communities, provided in its plan for the transfer of a certain tract of 3,800 acres of real estate known as "The Pinery"

to Senior Corporation, a secured creditor, in return for cash advances and a $6.3 million reduction in the amount of Senior's claim. A side agreement between Senior as substitute developer of the tract; the debtor as transferor; the "Pinery Property Protection Committee," a committee of lot owners and purchasers; and the "Pinery Homeowners Association, Inc.," a non-profit corporation of Pinery homeowners, which the plan incorporated by reference, required that a 15.4 acre portion of the tract be transferred to a "Pinery Metropolitan District," if such a district should be formed in the future, and if not, that the area be transferred to the Pinery Homeowners Association and be dedicated to non-commercial, recreational use. The plan was confirmed and the debtor transferred "The Pinery" to Senior Corporation which proceeded to develop the property. Nearly five years after confirmation of the plan, the Pinery Homeowners Association filed a motion in the bankruptcy court asking it to order Senior to convey the 15.4 acre tract to it as required in the agreement. Senior filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction.

The court ruled that it would normally have subject matter jurisdiction over post-confirmation controversies relating to provisions of a plan where the plan had not been fully consummated, citing 11 U.S.C. § 1142, and a provision in the plan for retention of jurisdiction. "However, even though jurisdiction continues until the case is closed and is also found through section 1142(b) to resolve post-confirmation matters, that does not necessarily mean that the bankruptcy court is compelled to hear and decide every dispute that occurs after a plan is confirmed." *86 B.R. at 677.* Because the plan had been confirmed nearly five years earlier and had reached "substantial consummation," the court held that "[t]his matter does not concern the reorganized debtor." *Id. at 679.* Therefore, despite the court's acknowledgment that "[t]he rights of these parties arise directly from the Plan and the Agreement, ... the creation of the property rights conferred upon the parties by 11 U.S.C. § 1141 and the Plan necessarily give rise to a new and

fully enforceable contract which could be interpreted by any court." *Id. at 680.* For these reasons, the District Court endorsed the recommendation that abstention be granted as to what it characterized as "a noncore matter." *Id.*

8. The case of *In re Verrazano Holding Corp.,* 86 B.R. 755 (Bankr.E.D.N.Y. 1988) involved an adversary proceeding filed in a bankruptcy court against a debtor by assignees of a contract purchaser claiming ownership in real estate. In addition to seeking a declaratory judgment in that regard and damages for tortious interference with contract against the debtor, the complaint also sought damages against the nondebtor seller for breach of contract and against the nondebtor seller and its two principals for fraudulent misrepresentation. The debtor purchased the real estate before its filing of bankruptcy, and during the pendency of the adversary proceeding a sale of the real property free and clear of liens was consummated with bankruptcy court approval. The nondebtor defendants moved to dismiss the complaint on the ground that the claims asserted against them were non-core matters unrelated to the bankruptcy case. In granting the motion to dismiss, the court cited the *Pacor* test of "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d 984 at 994. The court held that:

> With regard to the prerequisite of "actual controversy", this court authorized the debtor to sell the premises to a third party. An appeal was taken and a stay pending the appeal denied by the District Court. Thereafter, a sale was consummated and title to the premises transferred to a third party good-faith purchaser for value. Since the debtor neither retains title to the premises, nor seeks any entitlement to it, the claim for specific performance is a "right without a remedy", no longer justiciable in this court, although there still may exist in the plaintiffs a right to the proceeds of that sale. *Upon the sale of the premises to the third party, this court lost jurisdic-*

*tion over the premises. In re Xonics, Inc., [813 F.2d 127, 132 (7th Cir.1987)], since the debtor or its estate no longer has any interest in the premises, In re Muller,* 72 B.R. 280, 284 (C.D.Ill.1987) and does not allege any further equitable interest in it. *In re Chicago, Rock Island & Pacific R.R. Co.,* 794 F.2d 1182, 1187 (7th Cir.1986) (adjustment of the parties' rights to property of the estate subject to liens is a central function of bankruptcy law—but jurisdiction lapses when the property leaves the estate). When the closing was consummated the divestiture of the debtor's title resulted in a divestiture of this court's jurisdiction over the premises. [*Emphasis supplied.*]

*86 B.R. at 763.*

The court stated that the burden of proof of subject matter jurisdiction is upon the party asserting jurisdiction and held that the plaintiffs had failed to meet that burden. *Id. at 762.* The court abstained from hearing the one related proceeding involving the claim against the debtor for tortious interference with contract "in the interest of judicial economy, interest of comity with state courts, and respect for state law." *Id. at 764.*

9. Finally, *In the Matter of Xonics, Inc., supra,* dealt with the jurisdiction of a bankruptcy court to resolve the competing claims of two creditors against a fund which was abandoned under a confirmed Chapter 11 plan. Each creditor held a security interest in the debtor's receivables, some of which had been collected and the proceeds paid into an escrow account. Both agreed to a division of the proceeds and one creditor [First Wisconsin] withdrew its share immediately. The other creditor [Elscint] waited because it purchased some of the debtor's assets with its portion of the fund. When Elscint attempted to withdraw the amount which the parties had agreed belonged to Elscint, First Wisconsin blocked the withdrawal, raised objection on the ground that the agreement had been based upon misrepresentations by Elscint and suggested that the parties renegotiate. Elscint filed a contempt motion against First Wisconsin which the bank-

ruptcy judge declined to grant. So Elscint filed a second motion, this one to compel distribution of its share of the proceeds. The motion came on for hearing on the same day that the court confirmed the debtor's plan, which contained a provision abandoning the debtor's receivables over which the two creditors were litigating. Because the receivable proceeds were no longer property of the estate by reason of their having been abandoned, the bankruptcy judge denied the motion to compel distribution, holding that the court no longer had jurisdiction over the *res.* The U.S. District Court for the Northern District of Illinois affirmed and an appeal was taken. The Seventh Circuit Court of Appeals reversed because it theorized that the disposition of claims to the abandoned funds *might affect the treatment of other creditors,* and, in that event, found that 28 U.S.C. § 157(c)(1) would supply the basis for jurisdiction in the district court and/or the bankruptcy court depending upon the consent of the parties. "If the payments to creditors other than Elscint and First Wisconsin under the plan of reorganization depend on the disposition of the competing claims to the $280,000, then the district court has jurisdiction under § 157(c)(1), and if not, not." *813 F.2d at 132.* Accordingly, the case was remanded to the lower courts to decide whether a decision on the dispute would affect the distribution to other creditors.

Nevertheless, despite its reversal of both the bankruptcy court and district court decisions on the narrow ground noted above, the *Xonics* court agreed with the general proposition that bankruptcy jurisdiction "lapses when property leaves the estate." *Id. at 131.* The court went on to say:

... Suppose A, B, and C claim interests in a pool of oil. If A is a bankrupt, the bankruptcy court could determine the interests of all three in the property under 28 U.S.C. § 157(b)(2) or § 157(c)(1), because only after identifying the "property" of the estate may the court apportion that property among creditors. But if the estate should disclaim any interest in the pool, only the dispute between B

and C would remain. The resolution of that dispute would not affect the creditors of the bankrupt, and there would be no source of jurisdiction. That B and C might also be creditors of the bankrupt would not enlarge the court's power; there is no jurisdiction to resolve all disputes among creditors of a bankrupt. There is jurisdiction under § 157(c)(1) only when the dispute is "related to" the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors. *In re Paso del Norte Oil Co.*, 755 F.2d 421 (5th Cir.1985); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994–96 (3rd Cir.1984). The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved. *Cf. Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (same principle outside of bankruptcy law—a cross-claim between defendants requires a new source of federal jurisdiction when it does not affect the disposition of the claim that supplied the original federal jurisdiction). The unrelated dispute among two creditors also would not be a "core" proceeding under § 157(b)(2); it is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction. [Footnotes omitted.]

*Id.*

10. In the instant case, the Bank is the only creditor claiming an interest in the debtor's accounts receivable. The recovery of receivables proceeds by the Bank will not affect the recoveries of other creditors. There is no "link between the disposition of claims to abandoned property and the treatment of other creditors." *In the Matter of Xonics, Inc., supra at 132.* The Bank has already laid claim to all the proceeds resulting from the sale of the debtor's plant and equipment. The Chapter 11 reorganization case has been converted and is now proceeding as a Chapter 7 liquidation. A trustee has been appointed and a meeting of creditors has been held. The only possible effect the instant complaint will have upon the underlying bankruptcy case will be to delay its closing. The only reason to permit the Bank to maintain the instant complaint would be for its own convenience. The modification of the automatic stay extinguished the interest of the debtor's estate in the debtor's accounts receivable and permitted the Bank to collect them. The instant complaint brought by the Bank against a third party cannot be maintained here because the bankruptcy court has no independent subject matter jurisdiction to deal with matters that do not affect the estate. Even though the Bank bases its entitlement to postpetition receivables upon orders of this Court permitting the use of cash collateral, the complaint will depend upon state contract law for its determination. *Cf. In re Terracor, supra.*

As a non-core, unrelated proceeding, this Court lacks subject matter jurisdiction. For this reason, the Court need not address the defendant's contention that it also lacks *in personam* jurisdiction. The U.S. District Court for the District of Maryland might have jurisdiction over this complaint based upon the diversity of citizenship of the parties. However, the sole matter pending for decision is the instant motion for reconsideration.

The foregoing analysis and citation of case authority leads to the conclusion that the instant adversary proceeding must be dismissed for lack of subject matter jurisdiction. The plaintiff's motion for reconsideration will be denied.

ORDER ACCORDINGLY.