**In re HARLOW PROPERTIES, INC., Debtor.**

**Raymond G. HARLOW and Thelma J. Harlow, Appellants,**

v.

**PALOUSE PRODUCERS, INC., Appellee.**

BAP No. EW 85–1102 EAsM.

Bankruptcy No. 81–02265–414.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 18, 1985.

Decided Dec. 23, 1985.

Glen A. Harlow, Spokane, Wash., for appellants.

Bruce A. Charawell, Aitken, Schauble, Patrick & Neill, Pullman, Wash., for appellee.

Before ELLIOTT, ASHLAND and MEYERS, Bankruptcy Judges.

ELLIOTT, Bankruptcy Judge:

On the motion of the appellee, Palouse Producers, Inc., a creditor of the debtor, Harlow Properties, Inc., and pursuant to the debtor's confirmed plan, the bankruptcy court ordered the sale of a parcel of land known as the Home Place. In addition, the bankruptcy court subordinated the homestead exemption rights of Ray and Thelma Harlow, the record owners of the Home Place, to the plan.

The Harlows appeal the order. They argue that the bankruptcy court lacked subject matter and personal jurisdiction, that the order deprives them of their property without due process of law, and that the court could not subordinate their homestead rights in the Home Place.

## I. FACTUAL BACKGROUND

Appellants are shareholders, officers, and directors of the debtor corporation which is engaged in the business of farming. The debtor filed a petition for relief under Chapter 11 on December 10, 1981. One of the properties which the debtor farmed was the Home Place. The Home Place consisted of roughly 172 acres of farmland and 16 acres dedicated to residences, outbuildings, and pasture. The debtor leased the Home Place from the Harlows both before and after it filed its

Chapter 11 petition. The Harlows and their family occupy the residences.

The debtor's plan provided for the sale of the Home Place if the debtor was unable to make the plan payments. Ray Harlow signed the plan in his capacity as president of the debtor.

Six months after confirmation, on December 1, 1983, the debtor defaulted on the plan payments. At about the same time, Ray Harlow had the Home Place surveyed. He then sold the 172 acres comprising the farmland portion of the property.

In November 1984 Palouse moved for an order to sell the remaining 16 acres of the Home Place with the proceeds to be used to bring the plan payments to the unsecured creditors current. Palouse served its motion and notice of hearing on the debtor and the debtor's creditors by mail. Although the address for the debtor and the Harlows was the same, Palouse never served the Harlows with the motion or notice of hearing.

The debtor filed an objection to the motion on the ground that the Harlows, not the debtor, owned the Home Place. At the hearing counsel made appearances on behalf of Palouse and the debtor, but no one appeared for the Harlows. One of the witnesses called by Palouse was Ray Harlow.

On June 18, 1984, the bankruptcy court ordered, among other things, the sale of the remainder of the Home Place and the subordination of any homestead exemption which the Harlows might have in the Home Place to the plan provisions. The order specifically directed the debtor, Ray and Thelma Harlow, and any other necessary party to execute and deliver any instrument necessary to transfer the property regardless of how title was then vested.

## II. DISCUSSION

This appeal presents three issues. Did the district court, and the bankruptcy court by way of reference, have jurisdiction under 28 U.S.C. § 1334 to hear Palouse's motion for an order to sell the Home Place? Did the bankruptcy court have jurisdiction under 28 U.S.C. § 157 to enter a final order? And, last, did the bankruptcy court have personal jurisdiction over the Harlows?

■ These issues are raised for the first time in this appeal. Questions regarding subject matter jurisdiction, such as those posed by the first two issues, may be raised on appeal for the first time. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1393 (1969). We hold that the bankruptcy court had jurisdiction to hear the motion and had authority to enter a final order disposing of it.

However, the issue of jurisdiction over Mr. and Mrs. Harlow individually is more troublesome. A judgment is void if the court lacks personal jurisdiction. 7 *Moore's Federal Practice* ¶ 60.25[2] (3d ed. 1985). A void order is open to direct and collateral attack. *Id.* ¶ 60.25[3]. We hold that individuals who were never served with a motion resulting in an order adversely affecting their rights and who have not waived the defense of lack of personal jurisdiction may raise that defense for the first time on appeal. Those circumstances exist here. Because we conclude that the bankruptcy court lacked jurisdiction over the Harlows, we vacate that part of the order which affects their rights.

## A. SUBJECT MATTER JURISDICTION

■ When the bankruptcy court ordered the sale of the Home Place in June 1985, its subject matter jurisdiction was limited by two statutes. The primary grant of bankruptcy jurisdiction runs to the district courts and is contained in 28 U.S.C. § 1334. Section 1334 applies equally to the bankruptcy court, which is a unit of the district court, *See* 28 U.S.C. § 151. We take judicial notice of the May 8, 1985 order of the United States District Court for the Eastern District of Washington referring all bankruptcy cases and proceedings under 28 U.S.C. § 1334 to the bankruptcy judge pursuant to 28 U.S.C. § 157(a). Fed.R.Evid. 201. The bankruptcy court is further constrained by 28 U.S.C. § 157 which limits

the court's power to enter final orders and judgments. Sections 157 and 1334 both became effective on July 10, 1984. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, § 122(a), 98 Stat. 346 (1984).

### 1. Application of 28 U.S.C. § 1334

The Harlows, without reference to 28 U.S.C. § 1334, argue that the bankruptcy court's jurisdiction is limited to property owned by the debtor or in the debtor's actual or constructive possession. Relying on this foundation, they contend that the bankruptcy court lacked jurisdiction to order the sale of the Home Place because the Harlows, rather than the debtor, own and occupy the Home Place.

The two relevant subsections of 28 U.S.C. § 1334 are set out below:

(b) [T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. ....

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

Subsection (d) represents an expanded version of the *in rem* jurisdiction which existed under the Bankruptcy Act of 1898. *See generally, 1 Collier on Bankruptcy* ¶ 3.01[1] (15th ed. 1985). Under the 1898 Act, the jurisdiction of the courts of bankruptcy hinged on possession. If the property was in the possession of a third party by virtue of an adverse claim of ownership, a court of bankruptcy could not proceed in a summary fashion with respect to the property unless the adverse claimant consented to jurisdiction. Instead, the parties were forced to resort to a plenary suit in state court or in federal district court if a nonbankruptcy ground for federal jurisdiction could be found.

The case before us, in light of the Harlows' ownership and occupation of the Home Place, seems to present the type of

situation which would have defeated the summary jurisdiction of a court of bankruptcy under the 1898 Act. This suggests that jurisdiction to hear Palouse's motion did not exist under 28 U.S.C. § 1334(d). We need not decide that issue though because we find that jurisdiction exists under 28 U.S.C. § 1334(b).

Subsection (b) of Section 1334 continues the broad jurisdiction established by the Bankruptcy Reform Act of 1978 which elimiated the 1898 Act's inefficient fragmentation of bankruptcy jurisdiction into summary and plenary suits. It gives the district court *in personam* jurisdiction over proceedings connected to the bankruptcy case as a compliment to the longstanding *in rem* jurisdiction of the bankruptcy court.

■ A motion for an order requiring the debtor or other necessary party to execute the provisions of a confirmed plan is a proceeding arising under Title 11. Subsection (b) of Section 1334 mirrors the language of former 28 U.S.C. § 1471(b) which was part of the jurisdictional grant under the Bankruptcy Reform Act of 1978. The meaning of "arising under" was explained in the House Report accompanying H.R. 8200, the bill which led to the Bankruptcy Reform Act:

The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11.

H.R.Rep. No. 95–595; 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 6401.

Section 1142 of Title 11 requires a debtor to carry out the provisions of a plan and also permits the court to order performance of the plan:

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to

effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Subsection (b) implicitly contemplates a creditor, shareholder, or other party affected by the plan moving for an order which triggers the court's authority to direct a recalcitrant debtor or other party to perform acts necessary to consummate the plan.

■ Palouse's motion for an order to have the Home Place sold pursuant to the debtor's plan was premised on the court's authority set out in 11 U.S.C. § 1142. Consequently, the bankruptcy court, by virtue of the reference from the district court, had jurisdiction to hear Palouse's motion under 28 U.S.C. § 1334(b).

### 2. Application of 28 U.S.C. § 157

The Harlows argue that Palouse's motion was a noncore proceeding which only the district court could finally determine. Under 28 U.S.C. § 157 the bankruptcy court may enter final judgments and orders when the proceeding before it is core or when the parties consent to a final determination of a noncore proceeding. 28 U.S.C. § 157(b)(1), (c)(2). Otherwise, when the proceeding is noncore, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1).

Although it is ultimately the bankruptcy court's obligation to determine whether the proceeding before it is core or noncore, 28 U.S.C. § 157(b)(3), no determination was made concerning the character of Palouse's motion. Impliedly, however, the bankruptcy court found that the motion was core when it ordered the sale of the Home Place instead of submitting proposed findings of fact and conclusions of law to the district court. We agree with this tacit finding for the reasons stated below, but suggest that the bankruptcy court squarely address the issue in the future.

The Harlows characterize the proceeding below as an action by Palouse against them. The action, they assert, is founded on state law and designed to pierce the debtor's corporate veil in order to reach their personal assets. In the Harlows' view, since the action rests on state law and doesn't involve the debtor, it must, after construing 28 U.S.C. § 157 in the light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), be considered a noncore proceeding.

■ We disagree with the Harlows' characterization. Palouse was not trying to obtain new rights against the Harlows. It was simply attempting to enforce the rights it already had under the debtor's confirmed plan.

The definition of core proceedings is found in 28 U.S.C. § 157(b)(2). That subsection contains a nonexhaustive list of fifteen types of core proceedings. None of the fifteen directly covers an order directing the sale of property pursuant to a confirmed plan. Nevertheless, we find that orders enforcing the provisions of a confirmed plan fall within § 157(b)(2)'s flexible compass. The integral role which the plan, a creature unique to Title 11, plays in the prosecution of Chapter 11 and Chapter 13 cases leads us to believe that Congress intended that the bankruptcy court have the power to make final determinations concerning its enforcement. Our conclusion is buttressed by Congress' express inclusion of the closely related area of "confirmations of plans" in the definition of core proceedings. 28 U.S.C. § 157(b)(2)(L). Additionally, as one commentator discussing core proceedings noted, "[t]here has never been any doubt about the constitutional authority of a nontenured judge to enter final orders in [matters concerning administration], which are unique to bankruptcy cases." *1 Collier on Bankruptcy,* ¶ 3.01[2][b][3] (15th ed. 1985).

We therefore hold that the bankruptcy court had jurisdiction to enter a final order directing the sale of the Home Place pursuant to the debtor's plan.

## B. PERSONAL JURISDICTION

■ The Harlows assert that the bankruptcy court lacked personal jurisdiction over them. Relying on their earlier characterization of Palouse's motion as an action to pierce the corporate veil, the Harlows contend that the action against them should have been in the form of an adversary complaint. Service on the Harlows would then have been required by Bankruptcy Rule 7004. Although many parties were served with Palouse's motion, the Harlows were not.

Palouse presented its request for the sale of the Home Place in the form of a motion. Apparently Palouse felt that a contested matter proceeding initiated by motion rather than an adversary proceeding initiated by complaint was appropriate under the circumstances. Bankruptcy Rule 9014, which governs contested matters, requires that notice and an opportunity for hearing "be afforded the party against whom relief is sought." Rule 9014 also requires service of the motion in accordance with Bankruptcy Rule 7004.

Regardless of whether Palouse's request for the sale of the Home Place should have proceeded as an adversary action under Bankruptcy Rule 7001(7) (court ordered performance of a plan being analogous to the equitable remedy of specific performance) or as a contested matter under Bankruptcy Rule 9014, service on the Harlows was necessary. The Harlows unquestionably held a position adverse to that advocated by Palouse in its motion. As legal titleholders to the Home Place, they were being forced to sell their property in compliance with the debtor's plan.

Without service in conformity with Bankruptcy Rule 7004, the court had no personal jurisdiction over the Harlows. *See, Jackson v. Hayakawa,* 682 F.2d 1344 (9th Cir.1982) (applying Federal Rule of Civil Procedure 4); *In re Brown,* 7 B.R. 486 (Bankr.N.D.Ga.1980) (applying former Bankruptcy Rule 704). Given Mr. Harlow's appearance as a witness at the hearing, he clearly had actual notice of Palouse's motion. But "[n]either actual notice ... nor simply naming the person in the caption of the complaint ... will subject defendants to personal jurisdiction if service was not made in substantial compliance with [the rule]." *Jackson,* 682 F.2d at 1347 (citations omitted); *accord In re Brown,* 7 B.R. at 487.

■ The defense of lack of personal jurisdiction is waived unless raised in a preliminary motion or in the first responsive pleading. Bankruptcy Rule 7012(b). The Harlows' appeal is their first response to the Palouse motion. Because they were never served, the Harlows had no obligation to file an earlier response. *See* Bankr.R. 7012(a). Their argument that the bankruptcy court lacked personal jurisdiction is therefore timely and correct. Because of the lack of personal jurisdiction over the Harlows, the bankruptcy court's order is void to the extent that it affects their rights.

Because the portions of the bankruptcy court's order affecting the Harlows are void, we need not address the Harlows' argument that due process was violated by ordering the sale of the Home Place without service on them or their argument that the bankruptcy court had no power to subordinate their homestead rights in the Home Place.

## III. CONCLUSION

For the reasons stated, we find that the bankruptcy court had jurisdiction to hear and finally determine Palouse's motion, but that the court had no personal jurisdiction over the Harlows and the Harlows did not waive that defense.

Accordingly, we vacate only those portions of the order which affect the Harlows. Those portions are contained in Paragraphs 3, 4 and 5 of the order.

VACATED IN PART.