In re CAMPBELL SIXTY SIX EXPRESS, INC., Debtor.

GREAT SOUTHERN SAVINGS BANK AND CAMPBELL SIXTY SIX EXPRESS, INC., Plaintiffs,

v.

CENTRAL TRANSPORT INC., Defendant.

Bankruptcy No. 86–01697–S–11.
Adv. No. 92–6040–S–11.

United States Bankruptcy Court, W.D. Missouri, S.D.

Oct. 27, 1992.

---

M. Brent Hendrix, Great Southern Sav. Legal Dept., Springfield, Mo., for plaintiffs.

Alan R. Culp, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

KAREN M. SEE, Bankruptcy Judge.

### I.  INTRODUCTION

On July 10, 1992, a trial was conducted on this adversary proceeding filed by debtor Campbell 66 Express, Inc., and secured creditor Great Southern Savings Bank. Plaintiffs appeared by Counsel M. Brent Hendrix, and William Pitt, President of Campbell 66. Defendant Central Transport, Inc. (hereinafter "Central"), appeared by Counsel Allan Culp and by its corporate representative Gerald Rauch. William A. Pitt and Ray Shores testified on behalf of Campbell 66 and Great Southern. Gerald Rauch testified on the behalf of Central.

There are two matters for resolution. First the court must determine what amount, if any, is due to Central for reimbursement of paving costs at the Irving, Texas terminal, which Campbell 66 sold to Central after confirmation of the Chapter 11 liquidation plan. The second matter is an action to compel the release of certain funds presently held in escrow, which were originally placed in escrow to provide for payment of environmental cleanup costs of the Irving terminal property.

### II.  SCOPE OF POST–CONFIRMATION JURISDICTION

As a preliminary matter, for reasons set forth below defendant's motion to dismiss the adversary complaint is denied and the court concludes that it retains jurisdiction over this adversary proceeding arising from a post-confirmation sale of real property. This dispute arises from a confirmed liquidating Chapter 11 Plan that provides for continuing court supervision.

■■■ Confirmation of a Chapter 11 Plan does not divest the bankruptcy court of all jurisdiction. *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232 (4th Cir.1987). "A post-confirmation bankruptcy court retains jurisdiction over matters concerning the implementation or execution of a confirmed plan." *In re Joint Eastern & Southern Dist. Asbestos Lit.*, 129 B.R. 710, 794 (E. & S.D.N.Y.1991). Even when a plan is silent as to retention of jurisdiction, the bankruptcy court retains limited post-confirmation jurisdiction under the Code. *In re Baker*, 118 B.R. 24, 27 (Bankr.S.D.N.Y.1990). Section 1142(b) provides that "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). *Baker* held that the bankruptcy court retained post-confirmation jurisdiction to interpret the terms of a lease and purchase option granted post-petition by the Chapter 11 debtor. *Baker* supports the conclusion that the bankruptcy court retains jurisdiction to resolve disputes arising from post-confirmation transfers of property of the estate.

In addition to general statements of law, in this particular case the express provisions in the Plan, the Real Estate Contract, and the Amendments relating to the sale of the Irving terminal provide that the bank-

ruptcy court retains post-confirmation jurisdiction.

The First Amended Joint Plan of Reorganization contains several provisions indicating that the court may exercise post-confirmation jurisdiction over the pending adversary proceeding. As background, it is important to note the following. Article I of the Plan defines the "Liquidating Agent" as "the Debtor, acting in its capacity as a liquidating agent for the benefit of its creditors as provided by this Plan, subject to the continued jurisdiction of the Court." Plan, ¶ 1.25. Article IV provides for Treatment of Claims Impaired Under the Plan. The claim of Great Southern Savings and Loan is addressed in Article IV, ¶ 4.3: "The Debtor, acting as Liquidating Agent, shall proceed as expeditiously as is compatible with the best interest of the creditors of the Debtor to sell said real property...." Article V provides that upon the effective date of the Plan "all property of the Debtor, including all of the Real Property, Equipment, and Other Personal Property then remaining unsold ... shall be transferred to the Liquidating Agent." Plan, Article V, ¶ 5.3. The terms of the Plan grant the court jurisdiction over all property sold by the Liquidating Agent, including the Irving terminal.

Article VII of the Plan expressly provides for retention of jurisdiction. Article VII, ¶ 7.1 provides, in relevant part:

Subject to Article V, the Court shall retain full jurisdiction of these proceedings after confirmation until the later of the Consummation Date or closing of this case. Without intending to limit the generality of the foregoing, the Court shall have jurisdiction:

\* \* \* \* \* \*

D. To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court.

\* \* \* \* \* \*

F. To interpret, make orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan.

\* \* \* \* \* \*

I. Except as otherwise provided in the Plan, to make any determinations and to issue any orders to enforce, interpret or effectuate the Plan.

J. To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor, the Liquidating Agent, the Creditors Committee and any other third party....

In the Real Estate Contract and related court proceedings, Central Transport expressly consented to continuing bankruptcy court jurisdiction over the sale of the Irving terminal. Debtor sold the property to Central Transport on September 3, 1988. Pursuant to Debtor's motion, the court entered an Order Approving Notice of Sale and Sale Procedures. The Real Estate Contract provides at Paragraph No. 21, *Competitive Bidding*, that "Purchaser acknowledges that Seller is presently operating under Chapter 11 of the Bankruptcy Code and is subject to the jurisdiction of the Bankruptcy Court...." The court entered a Stipulated Order Approving Amendment to Real Estate Sale Contract on June 30, 1989 that required the Debtor to place $475,000 of the $1,300,000 sale proceeds into an escrow account for cleanup of any soil and ground water contamination at the Irving terminal.

The court retains jurisdiction to determine whether Debtor is entitled to return of any excess funds from the escrow account upon completion of soil and groundwater cleanup at the Irving terminal. The confirmed plan and the Sales Contract expressly provide that sale of the terminal was subject to the jurisdiction of the bankruptcy court. The broad "retention of jurisdiction" provision in Article VII also supports the conclusion that the court may exercise jurisdiction over this adversary proceeding because the dispute arises from sale of property necessary to carry out the terms of the Plan. The Plan expressly provides that the court retains jurisdiction to determine a dispute regarding title to

assets of the estate. The dispute involving the parties' rights to the escrow funds is covered by the Plan and is within the court's jurisdiction. In light of the numerous provisions providing for continuing jurisdiction of the bankruptcy court, it would not be logical to now require the parties to seek resolution of disputes related to liquidation of the estate in another court. Accordingly, the motion to dismiss based on lack of post-confirmation jurisdiction is denied.

## III.  PAVING DISPUTE

■ Central has been previously reimbursed for the expense of repaving areas which were paved and which had to be torn up during excavation of underground tanks pursuant to environmental cleanup activities. The first issue is a dispute as to whether Central is entitled to additional reimbursement from the escrowed funds for paving of a disputed strip of land. Central contends it is entitled to an additional reimbursement of approximately $22,-000.00, primarily for paving of an area approximately 200 feet long by 50 feet wide. The court finds that this tract was not originally paved, and therefore, Central is not entitled to reimbursement for paving it. Plaintiffs' evidence from both Mr. Pitt and Mr. Shores was that the disputed strip which Central paved was originally dirt, gravel, weeds, and small pieces of roofing material. The court gives considerable weight to Mr. Shores' testimony because he was a tenant at the terminal during the period in question and was there on a daily basis. Mr. Rauch testified for Central that the area was asphalt, but he also testified he had only been to the terminal once, and that was several years ago. The testimony of Mr. Shores and Mr. Pitt was more credible than that of Mr. Rauch.

Central has already been paid approximately $16,000.00 for repaving of the area where the underground tanks were dug out. The paving for which Central now seeks reimbursement was unnecessary. Therefore, the court finds that Central has been reimbursed in full for the paving and is not entitled to any further reimbursement.

## IV.  ESCROWED FUNDS

■ The escrowed funds dispute involves a request by Plaintiffs to release funds that were placed in escrow pursuant to the Amendment to the contract providing for environmental cleanup costs at the Irving terminal. Great Southern held a validly perfected lien on the property and now has a lien on the sale proceeds. Copies of the original contract and the Amendment to the contract were admitted into evidence. The sale of the terminal from Campbell 66 to Central for $1,300,000 took place in 1989, and at that time $475,-000.00 of the sale proceeds was placed in escrow with Ticor Title Insurance Company for potential costs of environmental cleanup. Cleanup work was commenced and has continued until the present. Since the date of sale, approximately $180,000.00 has been paid out of the escrow account, and there remains approximately $290,000.00 in escrow.

Plaintiffs contend the cleanup is virtually complete and that it is unnecessary to retain such a large balance in the escrow account. Testimony indicated that the cleanup is almost complete at this time and that the only significant activity that has taken place in the last 12 months has been quarterly monitoring of the four monitoring wells. This monitoring is being conducted pursuant to directives of the State of Texas Water Commission. The evidence established that the test results from the wells show that three of the four wells are within governmental guidelines, that the fourth well is just slightly outside the guidelines, and that the fourth well is expected to test within guidelines soon.

Testimony showed that the funds in the escrow are earning interest at three percent, but that Campbell is paying Great Southern seven percent on its loan, leaving a difference of four percent, and creating a substantial burden on the Debtor.

When the escrow account was established the parties had no idea how much the cleanup would cost and therefore, a large portion of the sale proceeds was put

into escrow. However, after three years of experience and based upon the evidence, it appears that only an inexpensive monitoring procedure is now required at the site. Also consistent with the evidence that the cleanup is substantially completed is the fact that Campbell 66 recently received a check in the amount of $244,991.74 from the Texas Water Commission for reimbursement of cleanup costs. Such payments are generally made at the conclusion of a cleanup job. It is unlikely that this payment would have been made unless the cleanup was substantially completed.

Plaintiffs contend that even if Texas requires continued monitoring for another year, based on past experience the monitoring would not be expected to exceed $5,000.00. Defendant argues that the funds should remain in escrow because the ultimate cleanup costs of the Irving terminal are still unknown at this time. However, it is clear that the situation is not the same as when the sales contract and escrow agreement were first entered into. After several years, during which the cleanup and monitoring have taken place, it is now clear the potential remaining liability is far less than the $290,000 now in escrow. The court concludes that it is inequitable to require that the full amount of $290,000.00 be kept in escrow, and therefore, orders that $20,000.00, which is four times the estimated costs of remaining cleanup and monitoring, shall remain in escrow, and the remainder shall be paid to Campbell 66 and Great Southern to be applied to reduce Campbell 66's indebtedness to Great Southern. However, it is the further ordered that in the unlikely event any further testing or cleanup costs exceed the amount in escrow, Central may demand the additional amount from Great Southern or Campbell 66, and may request this court to order plaintiffs to fund the escrow account in a greater amount in the future if appropriate.

## V. CONCLUSION

For the foregoing reasons, it is ordered that Central Transport has been reimbursed in full for paving costs incurred because of environmental cleanup work and therefore, Central Transport is not entitled to an additional $22,000.00 or any other amount for paving. It is further ordered that with regard to the funds escrowed at Ticor Title Insurance Company, all funds on deposit except $20,000 shall be paid to Campbell 66 and Great Southern, and $20,000.00 shall remain in escrow to be used for future environmental monitoring and residual cleanup costs until the Texas Water Commission certifies final compliance with the remediation plan. The funds, except for the $20,000, shall be released and applied to reduce Campbell 66's indebtedness to Great Southern. It is further ordered that, in the event any further monitoring or cleanup costs exceed the amount remaining in escrow, at that time Central may make demand against Great Southern and Campbell 66 for the excess amount. If Central succeeds in its claim, Campbell 66 or Great Southern shall pay to Central the amount of the claim (and if Great Southern pays, Campbell 66's indebtedness to Great Southern shall be increased accordingly). Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that on Central Transport's claim for $22,000 for paving costs, judgment is entered for plaintiffs Campbell 66 Express and Great Southern Savings Bank, with costs assessed against defendant Central Transport. It is

FURTHER ORDERED that the escrow account shall be reduced to the amount of $20,000, and the balance in excess of $20,000 shall be paid promptly to debtor Campbell 66 Express, Inc. and Great Southern Savings Bank jointly.

So Ordered.