**In re POLAR MOLECULAR CORPORATION,**
Debtor.

**Stephen S. GRAY, Trustee, Plaintiff,**

v.

**POLAR MOLECULAR CORPORATION,**
Defendant.

**Bankruptcy No. 93–10960–JNF.
Adversary No. 95–1740.**

United States Bankruptcy Court,
D. Massachusetts.

May 17, 1996.

---

William R. Baldiga, Brown, Rudnick, Freed & Gesmer, Boston, MA, for Stephen S. Gray, Trustee.

Paul P. Daley, Hale & Dorr, Boston, MA, for Debtor.

## MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the motion by the defendant, Polar Molecular Corporation ("Polar" or the "Debtor"), to dismiss or, in the alternative, to abstain from hearing the Trustee's Complaint (the "Motion To Dismiss"). By the Complaint To Recover Estate Funds And For Related Relief (the "Complaint"), Stephen S. Gray, the Chapter 11 trustee of the Debtor (the "Trustee"), seeks an order of this Court compelling Polar to remit certain income generated post-confirmation, for distribution to unsecured creditors pursuant to the Third Amended Plan of Reorganization (the "Plan"). The Debtor contends that this Court must dismiss the Complaint because it has no subject matter jurisdiction over the dispute or, alternatively, that this Court must abstain from hearing this proceeding. In addition, the Debtor argues that the Complaint fails to state a claim upon which relief can be granted. The Court received two oppositions to the Motion to Dismiss, one filed by the Trustee and the other by two individual creditors, Ronald W. Krumm and Chester J. Walsh ("Krumm" and "Walsh").

The Court heard the Motion To Dismiss on March 6, 1996. At the conclusion of the hearing, the Court instructed the parties to file briefs. The Court now makes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

### II. FACTS

On February 2, 1993, Polar filed its petition under Chapter 11 of the United States Bankruptcy Code. On May 14, 1993, the Court, for cause, ordered the appointment of the Trustee, thereby replacing the Debtor's management. On December 20, 1994, the Court confirmed the Plan, which was submitted by Mark L. Nelson and the Ad Hoc Committee to Save Polar Molecular Corporation.

On December 29, 1995, the same day the Trustee filed the instant Complaint, the Debtor filed a Motion For Entry Of Final Decree. The Court denied the Motion For Entry Of Final Decree because of the pendency of the Complaint. At the time the Trustee filed his Complaint, Polar had already made its initial payments to its creditors, as required by the Plan. The Debtor contends that the Plan has been substantially consummated. Despite discrepancies on this issue in the Complaint, the Trustee agreed at the hearing on the Motion To Dismiss that the Plan has been substantially consummated.

Pursuant to the Plan, the Plan proponents established a $300,000 fund which was distributed to holders of allowed general unsecured claims on the Plan's effective date. In addition, the Plan provided for further contingent distributions to be made to these general unsecured claimants from, *inter alia,* the Debtor's post-confirmation income. These supplemental dividends are based on the Debtor's income through December 31, 1997. Under the Plan, the amount of these future distributions is to be calculated pursuant to a formula based on the Debtor's "Gross Margin." [1]

As a mechanism for ensuring the Debtor's compliance with its post-confirmation Plan obligations, the Plan requires the Debtor to provide the Trustee with annual financial statements, including a calculation of Gross Margin, and copies of annual federal tax returns for the relevant periods. Additionally, the Plan provides for the retention by this Court of jurisdiction of this case. The Plan provides, in relevant part, the following:

The Bankruptcy Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Code and for the following purposes, *inter alia:* ...

(d) To determine all controversies and disputes arising under, or in connection with, the Plan and to interpret or construe the Plan or any order previously entered in this case or, if necessary, to cure any defect in the Plan or otherwise to modify

---

1. The Plan, Article I, section 1.18, defines "Gross Margin" as "sales [of the Debtor], less the direct cost of goods sold (exclusive of administrative overhead, applicable sales commissions and applicable royalties), all as defined under generally accepted accounting principles."

the Plan pursuant to the provisions of section 1127 of the Code;

(e) To determine all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

. . .

(i) To effectuate payments under, and performance of, the provisions of the Plan; and

(j) To determine such other matters and for such other purposes as may be provided for in the Confirmation Order.

The Plan, Article XII, section 12.0, ¶¶ d, e, i and j. The Order confirming the Plan (the "Confirmation Order") echoes the Plan language with respect to the retention of jurisdiction.

The Trustee's Complaint raises issues regarding the propriety of the calculation of Gross Margin and, therefore, of the sufficiency of the first installment of the post-confirmation dividends. In his Complaint, the Trustee claims that if Polar had properly accounted for its Gross Margin it would have remitted an additional $11,114.09. The Trustee states that the supplemental dividends were critical to creditor acceptance of the Plan and that unsecured creditors reasonably expected that a majority of their total dividends would consist of these post-confirmation payments. The Complaint is comprised of the following four counts: Count I for failure to perform under the Plan; Count II for fraud; Count III for improper accounting; and Count IV for unfair and deceptive business practices, under M.G.L. c. 93A.

## III. DISCUSSION

The Debtor's Motion To Dismiss raises the following four issues: (1) whether this Court has subject matter jurisdiction over the issues raised in the Complaint, (2) assuming the Court does have subject matter jurisdiction over the dispute, whether mandatory abstention is appropriate, or (3) whether discretionary abstention is appropriate, and (4) whether the Complaint states a claim upon which relief can be granted. The Court will address these issues *seriatim.*

### 1. *Subject Matter Jurisdiction*

#### A. *The Positions Of The Parties*
##### i. *The Debtor's Position*

The Debtor views the dispute as a simple contract dispute and tort claim based solely on state law. The Debtor contends that this is not a case that "arises under" or "arises in" a case under Title 11, because it invokes no substantive right provided by Title 11. As such, Polar argues that this Court has no subject matter jurisdiction under 28 U.S.C. § 1334. Polar further argues that because the United States District Court does not have original jurisdiction over this action under 28 U.S.C. § 157(a), it cannot delegate jurisdiction to this Court. Polar asserts that the dispute is not sufficiently "related to" the bankruptcy case to create jurisdiction and that there are no independent grounds therefor, as neither the Plan nor the parties can create or confer jurisdiction where none exists.

Polar also takes the position that the Plan has been substantially consummated and that no assets of the estate are involved in this dispute. Polar contends that the action has nothing to do with the administration of the estate, but is merely a claim asserted against its post-confirmation assets. Polar also contends that resolution of the dispute will not establish any principle which would benefit the creditors in the future and that the dispute involves less than $11,000.

##### ii. *The Trustee's Position*

The Trustee views this proceeding as an action pursuant to sections 1141 and 1142 of the Code to compel the Debtor to make the required payments and to otherwise comply with the express terms of the Plan. The Trustee asserts that the action pertains to the Plan itself and that, therefore, the action "arises under" title 11. On this basis, the Trustee argues that Court has the requisite subject matter jurisdiction to determine the issues raised by the Complaint under 28 U.S.C. § 1334.

The Trustee asserts that, under the Plan, the Court expressly retained post-confirmation jurisdiction over actions such as the one at bar. The Trustee further argues that

even without a specific retention of jurisdiction in a plan or confirmation order, bankruptcy courts maintain post-confirmation jurisdiction over actions which raise issues concerning the execution, implementation, administration or interpretation of a plan of reorganization and the enforcement of a confirmation order.

### iii. *Krumm and Walsh's Position*

In support of the Trustee and in opposition to the Debtor's Motion To Dismiss, two creditors, Krumm and Walsh, filed a memorandum in which they quote the provisions regarding the Court's retention of jurisdiction set forth in the Confirmation Order. Krumm and Walsh state that "We, as creditors, and as members of the Creditors' Committee that supported confirmation of the Plan relied on the plain language of these documents [the Plan and Confirmation Order]." Krumm and Walsh also support the Trustee's contention that any determination of the issues raised in the Complaint would have a significant effect on the amount of future supplemental distributions to unsecured creditors under the Plan.

### B. *The Statutory Sources Of Jurisdiction*
#### i. *28 U.S.C. § 1334*

■ After confirmation, there is no new statutory source of the bankruptcy court's jurisdiction. Jurisdiction remains governed by 28 U.S.C. § 1334 which provides, in relevant part, the following:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) ... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11....

28 U.S.C. § 1334(a) and (b). The jurisdiction of the district court granted under 28 U.S.C. § 1334 is referred to the bankruptcy court for "any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157.

■ In order for § 1334 "arising under" jurisdiction to apply, the action at bar must be "created or determined by a statutory provision of title 11." *In re Spaulding & Co.,* 131 B.R. 84, 88 (N.D.Ill.1990). *Accord, In re Cary Metal Products, Inc.,* 158 B.R. 459, 462 (N.D.Ill.1993). An action seeking "an order requiring the debtor or other necessary party to execute the provisions of a confirmed plan **is a proceeding arising under Title 11.**" *In re Harlow Properties, Inc.,* 56 B.R. 794, 797 (9th Cir. BAP 1985) (emphasis added). In contrast, " 'related to' jurisdiction encompasses only disputes that affect the payments to the bankrupt's other creditors or administration of the bankrupt's estate." *In re Southern Industrial Banking Corp.,* 63 B.R. 331, 335 (Bankr.E.D.Tenn. 1986). *Accord, Matter of Kubly,* 818 F.2d 643 (7th Cir.1987).

#### ii. *11 U.S.C. § 1142*

Section 1142(b) of the Code specifically addresses the bankruptcy court's post-confirmation jurisdiction. Section 1142 provides:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142. Regarding § 1142(b), the bankruptcy court in *In re Cary Metal Products, Inc.,* 152 B.R. 927, 931 (Bankr.N.D.Ill. 1993), stated that "[t]he plain text leaves little doubt that post-confirmation jurisdiction exists to the extent necessary to consummate the plan." *Id.* at 931. Other courts agree, finding their post-confirmation jurisdiction grounded in § 1142(b). *See In re Terracor,* 86 B.R. 671 (D.Utah 1988), where the court stated that "[t]he clear intent of Section 1142(b) is ... to assure that the terms and provisions of the confirmed Chap-

ter 11 plan are carried out until the plan is completed and a final decree is entered closing the case." *Id.* at 676. Likewise, in *In re Pioneer Inv. Serv. Co.,* 141 B.R. 635, 641 (Bankr.E.D.Tenn.1992), the court held that "the bankruptcy court's retention of post-confirmation jurisdiction, while limited, exists to ensure compliance with the provisions of title 11 and to ensure the proper execution and consummation of the debtor's plan."

### C. *Striking A Balance In The Exercise Of Jurisdiction*

■ Although it is well-settled that the bankruptcy court retains post-confirmation jurisdiction to interpret and enforce a confirmed plan of reorganization, courts have long struggled to define the limits of and judiciously exercise this jurisdiction. In a frequently cited quotation contemplating this issue, the Second Circuit stated:

> We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization.... Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of the courts to cast off as quickly as possible all leading strings which may limit it and hamper its activities and throw doubt upon its responsibility. It is not consonant with the purposes of the Act, or feasible as a judicial function, for the courts to assume to supervise a business somewhat indefinitely. Nevertheless the court must retain some jurisdiction after confirmation of a plan to see that it is consummated. We have, therefore, pointed out the existence of such complementary and auxiliary jurisdiction of the court to protect its original confirmation decree, prevent interference with the execution of the plan and otherwise aid in its operation.

*North American Car Corp. v. Peerless W. & V. Mach. Corp.,* 143 F.2d 938, 940 (2d Cir. 1944) (citations omitted). In another case decided under the Bankruptcy Act, the Tenth Circuit Court of Appeals commented on post-confirmation jurisdiction: "a court may retain jurisdiction, after confirmation, to guarantee that the plan of reorganization is complied with, but it may not keep the corporation in 'perpetual tutelage' by exercising control over all aspects of the corporate conduct or by assuming jurisdiction over controversies between the reorganized corporation and third parties." *Claybrook Drilling Co. v. Divanco, Inc.,* 336 F.2d 697, 701 (10th Cir. 1964).

Courts have given much consideration to what constitutes the proper balance in the exercise of post-confirmation jurisdiction. In *Matter Of Leeds Bldg. Products, Inc.,* 160 B.R. 689 (Bankr.N.D.Ga.1993), the court acknowledged that it "does not lose all jurisdiction once a chapter 11 plan has been confirmed," but stated that "its role is limited to matters involving the execution, implementation, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law." *Id.* at 691 (citations omitted). The confirmed plan in *Leeds* required the debtor to enter into a trust indenture in order to make distributions to unsecured creditors over a ten year period. The trust indenture was funded by a note from the debtor. The indenture trustee commenced an adversary proceeding seeking judgment in the sum of the unpaid note, based on the debtor's alleged default under the terms of the trust indenture. The *Leeds* court found that, by executing the note and the trust indenture, the debtor had implemented the relevant plan provisions and that there was no question as to the plan's interpretation. *Id.* at 691. For this reason, the *Leeds* court found that the dispute before it did not come "within its limited postconfirmation jurisdiction." *Id.* at 691. Likewise, in *In re J.T. Gerken Trucking, Inc.,* 10 B.R. 203, 204 (Bankr.N.D.Ohio 1981), the court held that "affirmation of the [collective bargaining] agreement in the plan does not confer jurisdiction upon the court over post confirmation controversies. A confirming court's jurisdiction is limited to matters concerning the operation of the plan."

Taking a broader view of post-confirmation jurisdiction, the court in *In re Joint Eastern*

& Southern Dist. Asbestos Lit., 129 B.R. 710, 794 (E. & S.D.N.Y.1991), retained and exercised jurisdiction over class action litigation involving asbestos tort claimants and the trust established for payment of their present and future claims which had been created under the debtor's confirmed plan of reorganization. The court ruled that a "post-confirmation bankruptcy court retains jurisdiction over matters concerning the implementation or execution of a confirmed plan." *Id.*, 129 B.R. at 794 (citing *Goodman v. Phillip R. Curtis Enterprises Inc.*, 809 F.2d 228, 232 (4th Cir.1987) and *In re Pittsburgh Terminal Coal Corp.*, 183 F.2d 520, 522 (3d Cir.), *cert. denied*, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950)). *Accord In re Johns–Manville Corp.*, 97 B.R. 174 (Bankr.S.D.N.Y.1989). *See also Harlow Properties, Inc.*, 56 B.R. 794 (Bankruptcy Appellate Panel of the Ninth Circuit ruled that bankruptcy court properly retained jurisdiction of creditor's motion for order to sell certain real property pursuant to the debtor's confirmed plan); *In re Blue Diamond Coal Co.*, 163 B.R. 798, 809 (Bankr. E.D.Tenn.1994) (bankruptcy court exercised post-confirmation jurisdiction over dispute where purchaser of debtor's assets sought order prohibiting U.S. Department of Labor from imposing liability upon it as "successor operator" of coal mine, as court had "the authority to construe the terms of a plan that it confirmed and to ensure that the plan is properly executed and consummated"); *In re Campbell Sixty Six Exp., Inc.*, 147 B.R. 200 (Bankr.W.D.Mo.1992) (bankruptcy court retained jurisdiction over adversary proceeding arising from post-confirmation sale of real property under confirmed liquidating Chapter 11 Plan); *In re Baker*, 118 B.R. 24, 27 (Bankr.S.D.N.Y.1990) (bankruptcy court retained post-confirmation jurisdiction to interpret terms of lease and purchase option granted post-petition by the debtor).

Similarly, the court in *In re Tri–L Corp.*, 65 B.R. 774, 779 (Bankr.D.Utah 1986) stated that, while "[i]t is contrary to the purposes of the Code and the judicial function for the bankruptcy court to retain jurisdiction over every aspect of the reorganized debtor, ... the court must retain some jurisdiction after confirmation to see that the plan is consummated." The *Tri–L* court concluded that

"the court may expressly retain jurisdiction over the plan, during its consummation, under a provision of the plan itself or the order of confirmation." *Id.* at 778.

### i. *Substantial Consummation*

Courts that have struggled to find the proper balance in the exercise of post-confirmation jurisdiction have recognized that jurisdiction may be limited following the "substantial consummation" of a plan. *See In re Bankeast Corp.*, 132 B.R. 665, 667 (Bankr. D.N.H.1991) and *In re DN Associates*, 165 B.R. 344, 346 (Bankr.D.Me.1994). Although the *Bankeast* Court did rule that it would retain jurisdiction "only to the point of substantial consummation of the plan," it implicitly recognized a broader grant of jurisdiction than it chose to exercise. *Bankeast*, 132 B.R. at 667. Notwithstanding its recognition that "[u]pon substantial consummation the court's role is further diminished," the *DN Associates* court rejected the argument that it was divested of jurisdiction to rule upon the post-confirmation fee applications of certain professionals "simply because the confirmed plan was substantially consummated ...." The court stated flatly that "[t]his is *not* the law." *Id.* at 346–47 (emphasis added).

 Although substantial consummation and the reduction of jurisdiction are concomitant, substantial consummation alone does not divest this Court of jurisdiction. The Code defines substantial consummation in section 1101 as follows:

In this chapter—

(2) "substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). "Substantial consummation" is a defined term which relates, *inter alia*, to one of several grounds for dismissal

under § 1112(b) of the Code. The District Court in *Terracor,* 86 B.R. at 676 n. 12, distinguished "consummation" of a plan from "substantial consummation," noting that "[c]onsummation of a plan involves many different acts, one of which is the 'substantial consummation' of a plan." The *Terracor* court found that it retained jurisdiction because the plan had not been *"fully* consummated." *Id.* at 676 (emphasis in the original).

■ As the terms of a plan of reorganization are fulfilled, there are necessarily fewer plan issues which might arise. At the point of substantial consummation, many of a plan's provisions will have been carried out. For this reason, simple logic dictates that at this stage in a reorganization the bankruptcy court's post-confirmation jurisdiction is reduced. *See In re Omega Corp.,* 173 B.R. 830, 834 (Bankr.D.Conn.1994) ("[t]he post-confirmation constriction of the bankruptcy court's jurisdiction results not from a change in the statutory basis for jurisdiction over proceedings arising under title 11 or arising in or related to a title 11 case, see 28 U.S.C. § 1334(b) (West 1993)—but rather from the fact that the universe of matters related to a case is diminished once confirmation is achieved.") Although upon the substantial consummation of a plan the court's jurisdiction is reduced, the court is not without jurisdiction to enforce the remaining unperformed terms of the confirmed plan. A contrary holding would render the provisions of § 1142 of the Code meaningless.[2]

### ii. *The Retention Of Jurisdiction Under A Confirmed Plan*

Other courts that have sought to find the proper balance in the exercise of post-confirmation jurisdiction have considered the effect of plan clauses which set forth the scope of retained jurisdiction. Many courts have found such clauses to be compelling. In *In re Hudson Feather & Down Products, Inc.,* 36 B.R. 466, 467–68 (E.D.N.Y.1984), the court held that where the confirmed plan of reorganization specifically provided that the bankruptcy court would retain jurisdiction over adversary proceedings pending at the time of confirmation, the court retained post-confirmation jurisdiction over a pending state court action. In *In re Allied Technology, Inc.,* 25 B.R. 484, 499 (Bankr.S.D.Ohio 1982), the court found that "[t]he key document for determination of this Court's post confirmation jurisdiction is ... the Plan itself." The Court of Appeals for the Fourth Circuit found that even when a confirmed Chapter 11 plan is silent as to the bankruptcy court's retention of post-confirmation jurisdiction, the court retains limited jurisdiction for the purpose of implementing the plan. *Goodman v. Phillip R. Curtis Enterprises,* 809 F.2d at 232.

■ Notwithstanding the influence of plan provisions regarding the retention of post-confirmation jurisdiction, it is well settled that a court cannot retain jurisdiction where none exists. In *Tri–L Corp.,* 65 B.R. at 778, the court stated that "[a] reservation of jurisdiction beyond what is necessary to effectuate the plan of reorganization is beyond the power of the bankruptcy court.... The bankruptcy court cannot obtain that power merely by inserting a provision in the plan or order of confirmation reserving jurisdiction." (Citing, *Reese v. Beacon Hotel Corp.,* 149 F.2d 610, 611 (2d Cir.1945), and *In re Flatbush Ave.–Nevins St. Corp.,* 133 F.2d 760, 762 (2d Cir.1943)). *See In re Almarc Corp.,* 94 B.R. 361, 365 (Bankr.E.D.Pa.1988).

### D. *The Scope Of Post–Confirmation Jurisdiction In The Present Case*

■ In light of the factors discussed above, the Court finds that the Trustee

---

**2.** The Court also notes that such a narrow view of post-confirmation jurisdiction would render meaningless the distinction between § 1112(b)(7) and § 1112(b)(8), and would entirely eviscerate a court's ability to act under § 1112(b)(8) after substantial consummation. Section 1112(b)(7) provides that the "inability to effectuate substantial consummation of a confirmed plan" constitutes cause for which the court may dismiss or convert a case to a case under chapter 7. Section 1112(b)(8) provides that "material default by the debtor with respect to a confirmed plan" also constitutes such cause. If the scope of the bankruptcy court's post-confirmation jurisdiction did not extend beyond the substantial consummation of a case, § 1112(b)(8) would be largely superfluous.

states a cause of action to enforce the Plan and that resolution of the issues raised by the Complaint will directly affect the amount of supplemental dividends to be distributed to the unsecured creditors. As such, the Court finds that the issues raised by the Complaint arise under § 1142 of the Code and that they fall well within the jurisdictional grant of § 1334 as a proceeding "arising under" title 11 and "arising in or related to" a case under title 11.

The Court further concludes that, in this case, the proper balance regarding the exercise of post-confirmation jurisdiction will be achieved only if the Court retains jurisdiction and determines the issues raised in the Complaint. The Court finds the facts in the *Leeds* and *J.T. Gerken* cases to be distinguishable from those in the present case. Unlike the dispute between the Trustee and the Debtor, the disputes in *Leeds* and in *J.T. Gerken* both arise from separate and independently enforceable agreements (the indenture trust and the collective bargaining agreements), which were adopted under the respective debtors' plans. In contrast, the Trustee in this case seeks to directly enforce Plan provisions. Furthermore, neither the controversy raised in *Leeds* nor in *J.T. Gerken* pertained to the amount of the distribution to creditors under the respective confirmed plans.

The Debtor has emphatically asserted that its Plan has been substantially consummated. Polar further argues that this Court retained jurisdiction "only to the point of substantial consummation of the plan, as that term is defined in § 1101(2) of the Code," citing *Bankeast,* 132 B.R. at 667, and *DN Associates,* 165 B.R. at 347.[3] Although the Court agrees that the Plan has been substantially consummated, for the reasons set forth above, the Court finds that this fact is not dispositive of the question of jurisdiction.

The Debtor in this case has also argued that "[n]othing in the Plan was intended to or could grant this Court jurisdiction over a post-confirmation contract and tort dispute between PMC [Polar] and its creditors." The Court finds this argument disingenuous. First, the Court finds that the dispute in the present case does not concern the on-going business or post-confirmation contracts of the Debtor. It pertains directly to the fulfillment of the Plan's terms. Second, this argument fails because the Debtor specifically agreed to this Court's retention of jurisdiction to resolve such disputes. The retention of jurisdiction contemplated by the parties consists of an inclusive list of purposes, as set forth above. The plain language of the retention of jurisdiction provisions in the Plan and Confirmation Order encompass the issues raised in the Complaint. The Trustee seeks to have the Court determine a dispute "arising under, or in connection with, the Plan" and to "effectuate payments under, and performance of, the provisions of the Plan." The Plan, Article XII. Third, notwithstanding the Debtor's sudden efforts to obtain a final decree, the case remains open. On the grounds that settlement of the dispute between the Trustee and Polar is "necessary to effectuate" the Plan, and as a matter of fairness to the parties who negotiated and voted for the Plan, the Court finds that it should exercise its retained jurisdiction. Moreover, as a practical matter, the Court finds that with its understanding of the Plan and the parties' history, it is in a better position to efficiently resolve the issues raised by the Complaint than a state court.

### 2. *Mandatory Abstention*

■■■ Having decided that the Court has subject matter jurisdiction, the Court reaches the question of whether it must abstain

---

**3.** The manner in which the Debtor referenced these cases in its brief is inaccurate. The Debtor stated, "[t]hus, this Court retained jurisdiction 'only to the point of substantial consummation of the plan, as that term is defined in § 1101(2) of the Code.'" The quotation is from *Bankeast,* but was taken out of context. After an extensive review of case precedent, the *Bankeast* court set forth the extent of jurisdiction it would retain in the "present reorganization case before the

Court" and noted that it would adhere to the same approach in future cases. The *Bankeast* court did not rule that the retention of broader jurisdiction would be beyond its statutory grant. As set forth above, the *DN Associates* court concluded that, notwithstanding substantial consummation of the reorganization plan before it, jurisdiction remained to consider the fee applications at issue.

from hearing the Complaint. Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The Court has determined that the Trustee's Complaint is grounded on claims "arising under title 11." For this reason, the mandatory abstention provisions of § 1334(c)(2) are inapplicable. Section 1334(c)(2) applies only to proceedings based on a state law claim or state law cause of action related to a case under title 11, not to claims arising under title 11.

### 3. *Discretionary Abstention*

■ Discretionary abstention is governed by 28 U.S.C. § 1334(c)(1), which provides that:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). The Court finds that the interests of justice and fairness to all parties who negotiated and voted to accept the Plan weigh heavily in favor of this Court retaining jurisdiction over the Complaint. The clauses regarding the retention of jurisdiction set forth in the Plan are significant and were agreed to by the parties. More importantly, the issues at hand go to the heart of consummation of the Plan, involving enforcement of its terms and affecting the amount of future distributions to unsecured creditors. Because there is *no related proceeding* commenced in state court and because this Court is familiar with the Plan and

the parties involved, this Court can most efficiently rule on the matter. For these reasons, the Court shall, in its discretion, decline to abstain from the instant proceeding and exercise its retained jurisdiction over the Complaint.

### 4. *Dismissal For Failure To State A Claim Upon Which Relief Can Be Granted*

Polar moves the Court to dismiss the Complaint on the grounds that its underlying allegations fail to state a claim upon which relief can be granted. Polar argues that there is flexibility in the application of Generally Accepted Accounting Principles ("GAAP") and that its application of GAAP used in calculating its Gross Margin was permissible.

■ The standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), requires the Court to accept the "factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992). The Trustee has specifically alleged that "[u]nder generally accepted accounting principles ... expenses such as freight from a vendor to Polar or from the vendor to Polar's customers, postage stamps, miscellaneous supplies, long distance telephone charges, and payments to a vendor for hardware and similar items ... are not 'costs of goods sold.'" Complaint at ¶ 14 [the Complaint contains two paragraphs numbered "14," the quotation is from the second paragraph so referenced]. Thus, the degree of flexibility of GAAP is precisely the question at issue. If the Trustee is right about the application of GAAP under the facts of the case, he has stated a claim upon which relief can be granted under Count I (for failure to perform the Plan) and under Count III (for improper accounting).

■ The Debtor also moves the Court to dismiss Count II (for fraud) and Count IV (for violation of M.G.L. c. 93A), on the basis that the Trustee has failed to allege any facts which, if proven, could support these claims. The Trustee states in his memorandum in opposition to the Motion To Dismiss that the

Complaint contains allegations that the Debtor knowingly misrepresented material facts by reporting a false accounting of the Debtor's Gross Margin and by failing to report the actual Gross Margin. A close review of the Complaint, however, reveals neither an allegation that the Debtor reported a false accounting of its Gross Margin, nor an allegation that the Debtor failed to disclose any of its income or expenditures. The Trustee only alleges facts sufficient to prove that the Gross Margin was calculated improperly. The Complaint fails to allege sufficient facts that would prove that the Debtor knowingly misrepresented material facts by failing to report actual Gross Margin or that the Debtor committed unfair acts or trade practices in reporting its Gross Margin. Indeed, the Trustee acknowledges in the Complaint at ¶¶ 10 and 11 that he received the materials and information concerning the reported Gross Margin from the Debtor. Accordingly, the Court finds that the Trustee has alleged insufficient facts to meet the minimum standard to withstand dismissal of Counts II and IV of the Complaint.

## IV. CONCLUSION

In accordance with the findings set forth above, the Court grants in part and denies in part the Debtor's Motion To Dismiss. With respect to Counts II and IV, the Court hereby grants Debtor's Motion To Dismiss. With respect to Counts I and III, the Court denies the Debtor's Motion To Dismiss. The Court shall schedule a trial on Counts I and III of the Complaint.